[No. B045617. Second Dist., Div. Seven. Nov. 14, 1991.]

ROBERT SPAR et al., Plaintiffs and Appellants, v.
PACIFIC BELL, Defendant and Respondent.

**COUNSEL**

Lascher & Lascher and Edward L. Lascher for Plaintiffs and Appellants.

Margaret deB. Brown, Sarah J. Diehl, R. Bart Kimball, John Keiser and Elta M. Wilson for Defendant and Respondent.

## OPINION

**WOODS (Fred), J.**—Canord Investment Company[1] appeals from the trial court's judgment which held, because respondent Pacific Bell's telephone facilities were a permanent nuisance, plaintiff's cause of action was barred by the three-year statute of limitations for a permanent nuisance/trespass. Plaintiff contends the nuisance was instead continuing and, therefore, its cause of action was not barred by the statute of limitations. We find the trespass/nuisance to be permanent in nature, barred by the statute of limitations, and therefore affirm the judgment of the trial court.

### FACTS AND PROCEEDINGS BELOW

In April 1988, Canord Investment Company filed suit against Pacific Bell, a public utility, for trespass and nuisance. Both theories of recovery were based on the existence of telephone lines and equipment which defendant buried under plaintiff's property in 1963. Defendant's amended answer asserted the affirmative defenses that it had acquired the right to maintain the facilities on the property as a prescriptive easement and also, that the three-year statute of limitations for a permanent trespass/nuisance had run at the time plaintiff filed its claim. Defendant also cross-complained for ejectment and for compensation under the doctrine of good faith improvement of another's property.

Prior to trial, defendant removed the facilities (conduits, wires, and manhole) from the property in response to plaintiff's demands.

The trial court bifurcated the trial and considered the statute of limitations and prescriptive easement defenses first. The trial court found defendant had placed the facilities under the property in 1963. The parties agreed the facilities had been situated under plaintiff's property. The facilities started at an easement, which defendant had along the adjoining public street, then turned and went under the adjacent private property, now owned by plaintiff. The facilities deviated beyond the easement and onto plaintiff's property from as little as twelve to sixteen inches in some places, to as much as ten to fifteen feet in other places.

The evidence also showed the facilities were intentionally placed by defendant to provide telephone service for the public indefinitely. An employee for defendant Pacific Bell testified the facilities were intended to be serviceable for at least 100 years. Heavy equipment was required to install

---

[1]Plaintiffs and appellants are partners in Canord Investment Company and hereafter will be referred to in the singular.

the new equipment and remove the old facilities which were buried 10 feet underground with dirt tightly compacted around them. Plaintiff had no knowledge of the facilities until 1987 when it decided to build a shopping center on the property. Defendant admitted it had no recorded easement for the facilities to remain on the property.

The trial court ruled: (1) the elements of prescription were not established by the evidence, and (2) plaintiff's claims were barred by the three-year statute of limitations for a permanent nuisance/trespass. The court explained because it was the intent of defendant for the facilities to remain indefinitely, the facilities were a permanent nuisance/trespass upon which the three-year statute of limitations had run at the time plaintiff filed its claim. (Code Civ. Proc., former § 338, subd. 2.)

Plaintiff appeals from the trial court's ruling on the ground it was error to find the nuisance/trespass permanent rather than continuing in nature, and, as a continuing nuisance, the statute of limitations would not bar the present action.

## Discussion

### I. *The Distinction Between Permanent and Continuing Nuisances*

In nuisance law, two classifications have emerged which determine the remedies available to injured parties and the applicable statute of limitations. The two primary classifications are permanent and continuing nuisances. Clear-cut distinctions between permanent and temporary nuisances are elusive at best. As one commentator noted: "In a number of cases courts have drawn a distinction between *damages* that are permanent and those that are temporary, allowing recovery of diminished market value where the injury was permanent and allowing cost of repairs where it was temporary or repairable at reasonable cost. In other situations courts have drawn a confusingly similar, but actually quite different distinction. This is the distinction between permanent *sources* of damage, such as nuisances or trespasses that cannot or will not be abated, and temporary sources of damage, such as nuisances or trespasses that will naturally terminate or those that will be terminated by court order. Courts sometimes overlook the distinction with resulting confusion. In any event, the distinction is difficult to apply and is worth careful attention." (Fns. omitted; original italics.) (Dobbs, Remedies (1973) § 5.4, p. 335.)

The lack of definitive guidelines for distinguishing between temporary and permanent nuisances/trespasses, prompted the following treatise comment:

"In fact, it has been said that the terms temporary and permanent nuisance are, in reality, often only short-hand conclusions to determine the outcome of a particular case or the legal effects of certain defenses, such as the statute of limitations. Thus, it is often difficult to distinguish between nuisances that are permanent in character and those that are not.

"Various rules or tests have been laid down for determining the classification of nuisances as permanent or temporary, but the distinctions between permanent nuisance and continuing or temporary nuisances are not always clearly delineated, and no short and all-inclusive rule or test has evolved. Rather, it seems that the cases must be decided in accordance with exact precedents rather than on principle. In many instances the distinction depends upon the particular facts, the measure of damages, whether the condition is negligently operated, or whether it is reasonably practicable for the condition to be abated." (Fns. omitted.) (58 Am.Jur.2d, Nuisances, § 26, p. 688.)

We now review the legal precedents that have evolved in California jurisprudence. In *Kafka* v. *Bozio* (1923) 191 Cal. 746, 750-751 [218 P. 753, 29 A.L.R. 833], the court held, "Where a trespass consists of a physical entry upon the lands of another and taking possession thereof under such circumstances as to indicate an intention that the trespass shall be permanent, the law may regard the wrong done in such case as complete at the time of entry and allow recovery in a single action of all damages resulting therefrom, including prospective as well as past damages. . . . In such a case the statute of limitations runs from the time of the original entry."

Cases which have found the nuisance complained of to be "unquestionably permanent" in nature have involved solid structures, such as a building encroaching upon the plaintiff's land. (*Troeger* v. *Fink* (1958) 166 Cal.App.2d 22 [332 P.2d 779]; *Rankin* v. *DeBare* (1928) 205 Cal. 639 [271 P. 1050].) (See also *Bertram* v. *Orlando* (1951) 102 Cal.App.2d 506 [227 P.2d 894, 24 A.L.R.2d 899] [concrete piers which extend across the common boundary line]; *Williams* v. *Southern Pacific R.R. Co.* (1907) 150 Cal. 624 [a steam railroad operating on plaintiff's land]; and *Field-Escandon* v. *DeMann* (1988) 204 Cal.App.3d 228 [251 Cal.Rptr. 49] [a buried sewer line running through plaintiff's property].)

It has been stated "[t]he clearest case of a permanent nuisance or trespass is the one where the offending structure or condition is maintained as a necessary part of the operations of a public utility." (*Spaulding* v. *Cameron* (1952) 38 Cal.2d 265, 267 [239 P.2d 625]; see also, 3 Witkin, Cal. Procedure (3d ed. 1985) Actions, §§ 423-424. pp. 456-458; 58 Am.Jur.2d, Nuisances, § 27, p. 688 [a permanent nuisance is of such a character as it will be

reasonably certain, or will be presumed, to continue indefinitely, or affect the value of the property permanently].)

■ In cases of a permanent trespass or nuisance, the damages are complete when the nuisance comes into existence and plaintiff is required to bring one action for all past, present and future damages within three years after the permanent nuisance/trespass has occurred. (*Rankin* v. *DeBare, supra,* 205 Cal. at p. 641.)

In contrast, the two primary characteristics of a continuing nuisance or trespass are: (1) the nuisance/trespass is abatable, and/or (2) the damages from the nuisance/trespass may vary over time. "[If] an encroachment . . . is abatable, the law does not presume that such an encroachment will be permanently maintained. The maintenance of such an encroachment is a continuing trespass or nuisance." (*Kafka* v. *Bozio, supra,* 191 Cal. at p. 751 [Encroachment by defendant's building progressively leaning over plaintiff's adjacent property line was an abatable and therefore continuing nuisance/ trespass.].)

Classic examples of a continuing nuisance include an ongoing or repeated disturbance where damages may vary over time, such as a nuisance caused by noise, smoke, and vibrations from airplane flights over homes (*Baker* v. *Burbank-Glendale-Pasadena Airport Authority* (1985) 39 Cal.3d 862 [218 Cal.Rptr. 293, 705 P.2d 866]), property contaminated by hazardous waste by the prior owner (*Mangini* v. *Aerojet-General Corp.* (1991) 230 Cal.App.3d 1125 [281 Cal.Rptr. 827]), and a dairy whose noxious odors pervade surrounding properties (*Wade* v. *Campbell* (1962) 200 Cal.App.2d 54 [19 Cal.Rptr. 173, 92 A.L.R.2d 966]). Even such a trespass as a locked gate placed by a city barring access to a public road has been held to be a continuous nuisance or trespass because it was removable. (*Phillips* v. *Pasadena* (1945) 27 Cal.2d 104 [162 P.2d 625].)

In these instances, "persons harmed by [the continuing nuisance] may bring successive actions for damages until the nuisance is abated. [Citation.] Recovery is limited, however, to actual injury suffered prior to commencement of each action. Prospective damages are unavailable." (*Baker* v. *Burbank-Glendale-Pasadena Airport Authority, supra,* 39 Cal.3d at p. 869.)

■ In determining whether a nuisance/trespass is continuing in nature, a few cases emphasize the characteristic of whether the damages may vary over time. (See, e.g., *Field-Escandon* v. *DeMann, supra,* 204 Cal.App.3d at p. 234 ["The salient feature of a continuing trespass or nuisance is that its impact may vary over time."].) Most cases, however, analyze the condition to determine whether the nuisance/trespass may be discontinued. In fact, our

Supreme Court has determined the crucial distinction between a permanent and continuing nuisance is whether the nuisance may be discontinued or abated at any time. (*Baker* v. *Burbank-Glendale-Pasadena Airport Authority*, *supra*, 39 Cal.3d at p. 869; *Kornoff* v. *Kingsburg Cotton Oil Co.* (1955) 45 Cal.2d 265, 270-271 [288 P.2d 507]; *Spaulding* v. *Cameron, supra*, 38 Cal.2d 265, 267; *Phillips* v. *Pasadena, supra*, 27 Cal.2d at p. 107; *Kafka* v. *Bozio, supra*, 191 Cal. at p. 751.)

██ By the above comparison of cases in which the courts of California have found a permanent nuisance/trespass on the one hand and a continuing nuisance/trespass on the other, we are compelled to come down solidly in favor of a permanent nuisance/trespass in this case by reason of the long standing permanent nature of these underground telephone utility lines.

We now turn to a discussion of the fact of voluntary removal of the underground telephone lines by the defendant.

II. *The Plaintiff Should Not Have Been Allowed to Elect Whether to Treat This as a Continuing Nuisance*

The nuisance/trespass complained of in this case has overwhelming characteristics of a permanent nuisance or trespass. The facilities were intentionally placed to provide service to the public indefinitely. An employee of defendant testified the facilities were intended to be operable for at least 100 years. It required considerable effort and heavy equipment to install and remove the facilities, which were 10 feet underground encased in tightly compacted dirt. Lastly, because defendant is a public utility, it might have been able to keep the facilities on plaintiff's property by paying just compensation to plaintiff. (See, *Spaulding* v. *Cameron, supra*, 38 Cal.2d at p. 267.)

The solitary fact in this case to hint that the nuisance/trespass was continuing was the voluntary removal and relocation of the telephone utility line by the defendant. We do not know from the record the reason for this voluntary act and refuse to speculate as to the exact reason for this act. We cannot say that this solitary fact either transformed the nuisance into a continuing nuisance or brought into play the benefit of the "close case" election to be afforded to the plaintiff.

An example of a case where the court allowed an election is *Kornoff* v. *Kingsburg Cotton Oil Co., supra*, 45 Cal.2d 265. Just as the plaintiffs in *Kornoff* were given the opportunity to elect whether to treat a cotton gin as a permanent or continuing nuisance, the trial court in the present case was presented with the same alternative.

In *Kornoff*, defendants operated a cotton gin six months out of the year. During the ginning season large quantities of fumes, dust and sediment were emitted into the air and penetrated into plaintiff's home. *Kornoff* is a classic case of a continuing nuisance because the nuisance was ongoing and repeated yearly with the possibility of the damages varying over time. However, the plaintiffs elected to treat it as a permanent nuisance, thus asking for past, present, and future damages. The court allowed the election and explained a plaintiff should not be forced to bring successive actions even though it is highly improbable the nuisance will be abated. (45 Cal.2d at p. 271.) But there is nothing in *Kornoff* to suggest that a plaintiff has an unbridled election in every case to elect whether to treat a nuisance as permanent or continuing. The proper analysis appears to be that a permissible election is dependent on whether the case is a "close" one pertaining to the permanancy of the encroachment. A cotton gin which intermittenly spews impurities appears in all respects to be a close call bringing into play the close case election to be afforded a plaintiff.

But, plaintiff in the present case is not presented with a factually close case. As previously discussed, it is difficult to imagine a more permanent encroachment than a telephone conduit buried 10 feet in the earth for approximately a quarter of a century, which is designed to have a useful life of 100 years. It would be straining reality to perceive this case as a close one.

In its ruling, the trial court relied on the decision in *Field-Escandon* v. *DeMann*, *supra*, 204 Cal.App.3d 228. In *Field-Escandon* the plaintiff sued the defendant for trespass because of a buried sewer line running through plaintiff's property, a line which had been in existence for over 25 years. The pipe was the only sewer line servicing defendant's house and without it the defendants would not have use of any plumbing facilities. The evidence submitted on the defendant's summary judgment motion established the sewer pipe was intended to be a permanent structure for sewage disposal. The trial court granted defendant's motion on the ground the sewer pipes were a permanent trespass, and, therefore, the three-year period had run over twenty years before and the action was barred by the statute of limitations. (*Id.*, at p. 232.) The Court of Appeal affirmed the judgment.

In the present case, the trial court felt *Field-Escandon* was "on all fours" and felt compelled to rule the telephone facilities were also a permanent nuisance. We agree.

The similarities between this case and *Field-Escandon* are inescapable. For instance, both pipes were intended to be permanent structures. Both had been buried underground for over 20 years. Neither of the plaintiffs was

aware of the underground condition. In *Field-Escandon*, the plaintiff discovered the trespass when plaintiff decided to build a retaining wall. The facilities in the present case were discovered when plaintiff began to build a shopping center.

The only difference between the two cases is the voluntary act of defendant in abating the nuisance.

In sum, because the nuisance/trespass in the present case had characteristics which were overwhelmingly permanent, we conclude plaintiff should not have been allowed to elect to treat the encroachment as a continuing rather than a permanent nuisance.

DISPOSITION

The judgment is affirmed. Respondent to recover costs of appeal.

Lillie, P. J., concurred.

**JOHNSON, J.**—I respectfully dissent.

The majority conclude because the underground telephone facility had "overwhelming characteristics" of a permanent nuisance, this case was not a "close one" and the plaintiffs, therefore, were not entitled to elect to treat the nuisance/trespass as continuing rather than permanent. The majority point out the telephone facility was on plaintiffs' land for over 20 years and was intended to operate in that location for at least 100 years.

While it is true the facility had many of the characteristics of a permanent nuisance/trespass, it is also true the facility had the primary and most critical indication of a continuing one—abatability. The majority, however, choose to give short shrift to this all-important, distinguishing characteristic in order to find as a matter of law the nuisance/trespass case was a permanent one.

As our Supreme Court has pointed out on several occasions, regardless how solid or seemingly permanent a structure is, if the structure can be removed it can be properly considered a continuing nuisance/trespass at the plaintiff's election. In *Baker* v. *Burbank-Glendale-Pasadena Airport Authority* (1985) 39 Cal.3d 862, 868 [218 Cal.Rptr. 293, 705 P.2d 866], the court noted "Whether a nuisance will be classified as continuing or permanent depends not on the offending party's interest in continuing the nuisance, but on the type of harm suffered." Thus, the telephone company's intent to use the underground facility for at least 100 years is irrelevant. What is signifi-

cant is that in this case the harm suffered by the plaintiffs was not permanent but only temporary because the facility, the source of the injury, was removed from their land upon its discovery.

In reality, the underground conduit in this case had characteristics of both a continuing and permanent nuisance/trespass. In cases of doubt as to the permanency of the injury "the plaintiff may elect whether to treat a particular nuisance as permanent or continuing." (*Baker, supra,* 39 Cal.3d at p. 870.)

Because this case unquestionably presents a question of doubt as to the permanency of the intrusion, precluding a finding as a matter of law the nuisance/trespass was permanent, I would conclude plaintiffs should have been allowed an election to treat the nuisance/trespass as continuing.

## I. *One of the Most Critical Characteristics of a Continuing Nuisance/Trespass Is Whether It Is Abatable*

In determining whether a nuisance/trespass is continuing in nature a few cases emphasize the characteristic of whether the damages may vary over time. (See, e.g., *Field-Escandon* v. *DeMann* (1988) 204 Cal.App.3d 228, 234 [251 Cal.Rptr. 49] ["the salient feature of a continuing trespass or nuisance is that its impact may vary over time"].) This analysis, that relies on the type of injury to define a nuisance as either permanent or temporary, has been criticized as adding to the confusion of terms.

For a specific example, in *Thackery* v. *Union Portland Cement Co.* (1924) 64 Utah 437 [231 P. 813], the court held that a nuisance created by operation of a cement plant and deposit of fine particles from it on plaintiff's land was "recurrent" and not permanent because sometimes the wind took the particles in the other direction and hence the invasion and injury varied. In analyzing this case, a commentator noted "This seems to represent a misunderstanding of the 'permanent' notion, since it is the permanence of the source, not the constancy of the invasion, that is usually controlling." (Dobbs, Remedies (1973) § 5.4, p. 335.) Meanwhile our Supreme Court, unlike the Utah Supreme Court, recognized this difference in *Phillips* v. *Pasadena* (1945) 27 Cal.2d 104 [162 P.2d 625], in which it held a gate placed across a city street was a temporary nuisance on the basis the nuisance was removable—not because the injury it caused varied over time.

Most cases analyze the condition to determine whether the nuisance/trespass may be discontinued. In fact, our Supreme Court has determined the crucial distinction between a permanent and continuing nuisance is whether the nuisance may be discontinued or abated at any time. (*Baker* v. *Burbank-*

*Glendale-Pasadena Airport Authority, supra,* 29 Cal.3d at p. 869; accord *Kornoff* v. *Kingsburg Cotton Oil Co.* (1955) 45 Cal.2d 265, 270-271 [288 P.2d 507]; *Spaulding* v. *Cameron* (1952) 38 Cal.2d 265, 268 [239 P.2d 625]; *Phillips* v. *Pasadena, supra,* 27 Cal.2d at p. 107; *Kafka* v. *Bozio* (1923) 191 Cal. 746, 751 [218 P. 753, 29 A.L.R. 833]; see also 3 Witkin, Cal. Procedure (3d ed. 1985) Actions, § 425, p. 458; 58 Am. Jur.2d Nuisances § 28, p. 690 ["if a nuisance is a use which may be discontinued at any time, it is considered continuing in character"]; Annot., Injunction Against Repeated or Continuing Trespasses on Real Property (1958) 60 A.L.R.2d 310; McCormick, *Damages for Anticipated Injury to Land* (1924) 37 Harv.L.Rev. 574, 591 [primary criteria for determining permanence is plaintiff's ability to abate].)

Even the *Field-Escandon* court seemed to rely heavily on the abatability issue. In reading the opinion closely it is implicit the court acknowledged it was "improbable as a practical matter" the sewage line could or would have been abated. (See *Spaulding* v. *Cameron, supra,* 38 Cal.2d at p. 268.)

The California Supreme Court also recognized there would be cases where it might be difficult to determine whether a nuisance or trespass was permanent or continuing. Plaintiff relies on *Baker* v. *Burbank-Glendale-Pasadena Airport Authority, supra,* 39 Cal.3d 862, as an example of this type of situation. In *Baker,* homeowners who lived adjacent to the Burbank-Glendale-Pasadena Airport sued the airport for nuisance caused by noise, smoke, and vibrations from flights over their homes. The trial court dismissed the nuisance cause of action as barred by the statute of limitations covering permanent nuisances. The plaintiffs appealed. (*Id.* at pp. 865-866.)

The court stated, "Airport operations are the quintessential continuing nuisance. Although the [federal] law precluding interference in any way with flight patterns and schedules adds an element of permanency to an otherwise continuing problem, it does not mandate overall that the nuisance is a permanent one. . . . Because plaintiffs elected to treat the airport as a continuing nuisance, we conclude that the statute of limitations does not bar their nuisance claims." (39 Cal.3d at p. 873.) Thus, the Supreme Court held, "In case of doubt as to the permanency of the injury the plaintiff may elect whether to treat a particular nuisance as permanent or continuing." (*Baker* v. *Burbank-Glendale-Pasadena Airport Authority, supra,* 39 Cal.3d at p. 870; see also *Kafka* v. *Bozio, supra,* 191 Cal. at p. 752 ["In all cases of doubt respecting the permanency of the injury, courts are inclined to favor the right to successive actions"]; see also *United States* v. *Dickinson* (1947) 331 U.S. 745, 749 [91 L.Ed. 1789, 1794, 67 S.Ct. 1382] [expressing preference for

election of remedies]; Note, *Developments in the Law—Statutes of Limitation* (1950) 63 Harv. L. Rev. 1177, 1205-1207.)[1]

## II. *The Plaintiff Should Have Been Allowed to Elect Whether to Treat This as a Continuing Nuisance*

If there ever was a case of doubt, it is the case presently before the court. The nuisance/trespass complained of in this case has many of the characteristics of a permanent nuisance or trespass. The facilities were intentionally placed to provide service to the public indefinitely. An employee of defendant testified the facilities were intended to be operable for at least 100 years. It required considerable effort and heavy equipment to install and remove the facilities, which were 10 feet underground encased in tightly compacted dirt. Lastly, because defendant is a public utility, it might have been able to keep the facilities on plaintiff's property by paying just compensation to plaintiff. (See *Spaulding* v. *Cameron, supra,* 38 Cal.2d at p. 267.)

In *Phillips* v. *Pasadena, supra,* 27 Cal.2d 104, a case similar to the present one, the plaintiff sued the city for closing a road, which was the only safe means to go to and from plaintiff's resort. The city blocked access to the road by placing a locked gate across it at an intersection within the city. The trial court dismissed the action as barred by the three-year statute of limitations for a permanent nuisance/trespass. (*Id.* at pp. 105-106.) The plaintiff contended the condition was a continuing nuisance/trespass because the defendant had removed the barrier on demand on previous occasions and thus defendant's intention to permanently obstruct the road was not immediately apparent to plaintiff. The judgment was reversed on appeal. The court said it could not be found "as a matter of law, that the locked gate constituted a permanent nuisance, since it appears. . . it could have been removed at any time." (*Id.* at p. 108.)

---

[1]Other jurisdictions have noted with approval an election of remedies where the nature of the wrong makes choosing when to bring suit, and whether to sue for only past or prospective damages, becomes a difficult choice for a plaintiff. In *Strange* v. *the Cleveland, C. C. & St. L. Ry. Co.* (1910) 245 Ill. 246, 252 [91 N.E. 1036, 1039] the Supreme Court of Illinois stated " 'The apparent discrepancy in the American cases on this subject may, perhaps, be reduced by supposing that where the nuisance consists of a structure of a permanent nature and intended by the defendant to be so, or of a use or invasion of the plaintiff's property or a deprivation of some benefit appurtenant to it for an indefinitely long period in the future, the injured party has an option to complain of it as a permanent injury and recover damages for the whole time, estimating its duration according to the defendant's purpose in creating or continuing it, or to treat it as a temporary wrong, to be compensated for while it continues,— that is, until the act complained of becomes rightful by grant, condemnation of property or ceases by abatement.' " (See also *Hockaday* v. *Wortham,* (1900) 22 Tex. Civ. App. 419 [54 S.W. 1094] [in an action for the maintenance of a cattle barn as a nuisance, in view of the expressed purpose of the defendant to continue the nuisance, the plaintiff was entitled to an election to sue either for temporary or permanent injury.].)

As in *Phillips*, it cannot be said as a matter of law the facilities here were a permanent nuisance simply because they were maintained by a public utility vested with a public interest. Although seemingly permanent, the facilities, like the gate in *Phillips*, apparently could have been removed at any time. In fact, they *were* removed by the defendant in the instant case before trial began. Therefore, the complained of facilities had the main characteristic of a continuing nuisance—they were abatable. That they were abatable was proved conclusively by the fact they were abated in an attempt to head off threatened litigation to force removal of the facilities.

Because the nuisance in the present case has characteristics of both a permanent and continuing nuisance or trespass, the plaintiffs should be allowed to elect whether to treat the nuisance as continuing or permanent. Therefore it was error for the trial court to have ruled the nuisance was permanent as a matter of law when there was obviously doubt as to whether or not it was a permanent nuisance. (*Kornoff* v. *Kingsburg Cotton Oil Co.*, *supra*, 45 Cal.2d 265, 271 [plaintiff should not be forced to bring successive actions even though it is highly improbable the nuisance will be abated]; see also *Polin* v. *Chung Cho* (1970) 8 Cal.App.3d 673, 677 [87 Cal.Rptr. 591] [the rule of permanent nuisance is for "the benefit of plaintiff, [and] plaintiff should not be compelled to treat a condition as 'permanent' when plaintiff prefers not to so treat it."].)

Accordingly, plaintiff in the present case should not be compelled to treat the nuisance/trespass as permanent when it has elected to treat it as continuing. The plaintiff's election to treat the condition as a continuing nuisance/trespass is confirmed by the complaint which asks primarily for past damages. It was stated by the court in *Baker*, "public policy militates against defining a nuisance as permanent or continuing on the basis of [public entity] privilege alone. As noted, the purpose of nuisance law is to provide a means of recovery for harm suffered. The doctrine of election is designed to facilitate just and equitable recovery." (*Baker* v. *Burbank-Glendale-Pasadena Airport Authority*, *supra*, 39 Cal.3d at p. 871.) The only way "just and equitable recovery" can be obtained in the present case is by allowing plaintiff to treat the nuisance as continuing.

The trial court and the majority contend this case is controlled by the decision in *Field-Escandon* v. *DeMann*, *supra*, 204 Cal.App.3d 228, which found an underground sewer pipe to be a permanent nuisance. Although the trial court felt *Field-Escandon* compelled the conclusion the telephone facilities were also a permanent nuisance, in ruling the trial court acknowledged several times it was a harsh result.

There are indeed numerous similarities between this case and *Field-Escandon*. However, there is one vital difference between the two cases

which was not considered by the trial court. In the instant case the nuisance *was* abated. On the other hand, in *Field-Escandon* not only was the nuisance *not* abated but it was clear the defendants had no intention to abate their only means of sewage. As such, the abatability of the condition in *Field-Escandon* was "improbable as a practical matter." (*Spaulding* v. *Cameron, supra,* 38 Cal.2d at p. 268.) Similarly, if the only possible site for defendant's telephone facility had been on plaintiffs' property and that facility were essential to the telephone company's operation, the instant nuisance would have been permanent. Indeed, if that were the case, as in *Field-Escandon,* the defendant would not have chosen to remove it. But this particular location was not essential. So the company's nuisance was not only abatable, it was abated. Consequently, *Field-Escandon* is neither conclusive nor persuasive on the facts of this case.

I am bothered, in part, because the the majority opinion results in an apparent oxymoron, in fact, a double oxymoron—the abated "unabatable" nuisance and the impermanent "permanent" trespass. While the majority treats the fact the telephone company had abated the nuisance by removing the offending equipment as some sort of irrelevant incident, it is, in logic and common sense, *the* determinative legal fact.

Indeed the majority opinion creates something of a legal anomaly. It characterizes appellant's cause of action as one for a "permanent" nuisance in a situation where appellant would only be entitled to damages for a "continuing" nuisance, assuming no statute of limitations problem existed. The primary difference between these two causes of action is the entitlement to damages for *future* injuries when suing for a "permanent" nuisance. In essence, when a nuisance indeed is going to be a permanent intrusion, the law allows a property owner the opportunity to accept this as a fact of life and sue for damages to compensate for the *future* injuries the owner will suffer through the entire life of the ongoing intrusion on its property. The cause of action for a "continuing" nuisance, on the other hand, is solely for *past* injuries and cannot include a prayer for future damages since it is assumed the nuisance will be abated sometime in the future.

Here the defendant already had abated the nuisance by removal of the offending equipment from appellant's property. The nonexistent "permanent" nuisance was no longer causing injuries compensable through "permanent nuisance" damages. Consequently, there were no future injuries to suffer and appellant could only file an action for a "continuing" nuisance and not for a "permanent" nuisance. This is what appellant did—file a suit for a "continuing" nuisance. Yet, paradoxically, the majority opinion holds appellant could not allege a cause of action for a "continuing" nuisance. Rather appellant was limited to a cause of action for a "permanent" nuisance—*even*

*though that was not be a viable cause of action once the nuisance was abated.* After consigning appellant to that nonviable cause of action, the majority opinion then decides the statute of limitations has run on that species of lawsuit.

In fact, assuming no statute of limitations problems existed for either kind of cause of action, appellant would not have been entitled to file a cause of action on a "permanent" nuisance theory. Instead he properly would have been allowed to pursue damages for past injuries only under a "continuing" nuisance theory. Consequently, if properly characterized, appellant's lawsuit would not be barred by the statute of limitations. Only by pigeon-holing it in a category where it *could not* fit *were statute of limitations problems irrelevant* does the majority opinion create a statutory bar to this lawsuit.

In sum, because the nuisance/trespass in the present case shared characteristics of both a permanent and continuing nuisance, I conclude under settled and sound principles of California law plaintiffs should have been allowed to elect to treat the encroachment as a continuing rather than a permanent nuisance. (*Baker* v. *Burbank-Glendale-Pasadena Airport Authority, supra,* 39 Cal.3d 862.) Having elected to treat the nuisance/trespass as continuing, I would further find the statute of limitations was not a bar to their action for damages and plaintiffs should have been allowed to seek such past damages as may have accrued within the statutory period.

Appellants' petition for review by the Supreme Court was denied February 20, 1992.