[No. H010220. Sixth Dist. Jan. 19, 1993.]

WILLIAM CAPOGEANNIS et al., Petitioners, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
WILLIAM SPENCE et al., Real Parties in Interest.

**COUNSEL**

Reed, Elliott, Creech & Roth, George J. Berris, Jeffrey S. Lawson and Laurie Berger for Petitioners.

No appearance for Respondent.

Hoge, Fenton, Jones & Appeal, Nora Frimann and Cheryl L. Mattson for Real Parties in Interest.

**OPINION**

**BAMATTRE-MANOUKIAN, J.**—In 1984 William and Kathleen Capogeannis bought land from William and Rita Spence. At the time of the

purchase the Capogeannises did not know that there were underground fuel storage tanks on the land, or that the tanks had leaked and had contaminated soil and groundwater with petroleum hydrocarbons, but by early December 1987 the Capogeannises were fully aware of the contamination and of their responsibility, as the current landowners, for cleaning it up. In December 1990 the Capogeannises sued the Spences and Tri-Pallet, Inc., a long-term tenant on the land, on several broadly pleaded theories including nuisance, trespass, and a right to indemnification, to recover their cleanup costs and for related damages. Respondent superior court granted the Spences' motion for summary adjudication that the Capogeannises' nuisance and trespass theories (among others) were barred by the three-year statute of limitations applicable to "[a]n action for trespass upon or injury to real property." (Code Civ. Proc., § 338, subd. (b); cf. *id.* § 437c, subd. (f); *City of Emeryville* v. *Superior Court* (1991) 2 Cal.App.4th 21, 25 [2 Cal.Rptr.2d 826].).

By writ petition (Code Civ. Proc., § 437c, subd. (*l*)) the Capogeannises seek reinstatement of their nuisance and trespass theories. Tri-Pallet had joined in the Spences' motion; respondent court's formal order refers only to the Spences, but it is apparent from the record that respondent court had concluded that the Capogeannises' theories were barred as to both the Spences and Tri-Pallet. To avert unnecessary additional proceedings we shall honor Tri-Pallet's request that the formal order be deemed to grant summary adjudication for both defendants, and that we review the order as so construed.

We shall conclude that summary adjudication should not have been granted as to the Capogeannises' nuisance theory against either defendant, or as to their trespass theory against Tri-Pallet.

There is no significant dispute as to the relevant facts.

The parties agree that the Spences bought the land before 1970 and that they leased all or part of it to Tri-Pallet in 1977. It may be inferred that the tanks were in place, and used to store gasoline and diesel fuel, before 1981 but were not used thereafter, and were assumed to be empty when the Spences sold the land to the Capogeannises in 1984.

The Capogeannises did not learn of the tanks until, in November 1986, a fire department employee advised them that under local ordinances the tanks must be either equipped with monitoring devices or removed. The Capogeannises arranged to have the tanks removed.

In February 1987, in the course of the removal, it was discovered that there were several holes in the tanks and that adjacent soil was obviously

contaminated. Over the next several months extensive sampling and testing disclosed widespread soil and groundwater contamination by petroleum hydrocarbons. By December 7, 1987, the Capogeannises were fully aware of the scope and gravity of the contamination and of their responsibility, jointly and severally with others who might be responsible for the contamination, for cleaning it up. By that time the Capogeannises had already made demands upon the Spences and Tri-Pallet to accept responsibility for the cleanup. But the Capogeannises did not commence this action until December 14, 1990, more than three years later.

In their answers to the Capogeannises' complaint both the Spences and Tri-Pallet alleged, among other affirmative defenses, that the Capogeannises' claims were barred by applicable statutes of limitations. The Spences (and Tri-Pallet, by joinder in the Spences' motion) then moved for summary judgment, or in the alternative for summary adjudication, on the sole ground that all, or some, of the Capogeannises' theories of recovery were barred by the three-year statute. Respondent court granted the motions as to all of the Capogeannises' theories except indemnity; the Capogeannises seek reinstatement of their nuisance and trespass theories.

## 1. *Pleadings*

At the threshold of our de novo review of a summary judgment or summary adjudication granted on motion of the defense we consider the scope of the complaint (*AARTS Productions, Inc.* v. *Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064-1065 [225 Cal.Rptr. 203]) and also assess whether it sufficiently pleads the relevant theory or theories of recovery. (*Robinson* v. *Hewlett-Packard Corp.* (1986) 183 Cal.App.3d 1108, 1131 [228 Cal.Rptr. 591]; cf. *Heredia* v. *Farmers Ins. Exchange* (1991) 228 Cal.App.3d 1345, 1353 [279 Cal.Rptr. 511].)

We are satisfied that the Capogeannises have sufficiently pled a theory of civil recovery for nuisance against both the Spences and Tri-Pallet. (Civ. Code, § 3479; *Mangini* v. *Aerojet-General Corp.* (1991) 230 Cal.App.3d 1125, 1133-1137 [281 Cal.Rptr. 827]; cf. *Stoiber* v. *Honeychuck* (1980) 101 Cal.App.3d 903, 919-921 [162 Cal.Rptr. 194]; cf. also *Institoris* v. *City of Los Angeles* (1989) 210 Cal.App.3d 10, 20 [258 Cal.Rptr. 418].) Neither the Spences nor Tri-Pallet has suggested otherwise.

The pleading of the Capogeannises' trespass theory against Tri-Pallet presents a closer question (cf. *Smith* v. *Cap Concrete, Inc.* (1982) 133 Cal.App.3d 769, 774 [184 Cal.Rptr. 308]), but for purposes of this proceeding we shall give the Capogeannises the benefit of any doubt. (Cf. *Mangini*

v. *Aerojet-General Corp., supra*, 230 Cal.App.3d 1125, 1141.) We anticipate that the merits of this theory will be thoroughly tested in the course of further proceedings.

■ But we cannot validate the Capogeannises' trespass theory against the Spences.

■ California's definition of trespass is considerably narrower than its definition of nuisance. " 'A trespass is an invasion of the interest in the exclusive possession of land, as by entry upon it . . . . A nuisance is an interference with the interest in the private use and enjoyment of the land and does not require interference with the possession.' " (*Wilson* v. *Interlake Steel Co.* (1982) 32 Cal.3d 229, 233 [185 Cal.Rptr. 280, 649 P.2d 922], quoting from Rest.2d Torts, § 821D, com. d; cf. also Prosser & Keeton, Torts (5th ed. 1984) § 87, p. 622; 11 Witkin, Summary of Cal. Law (9th ed. 1990) Equity, § 125, pp. 806-807.) California has adhered firmly to the view that "[t]he cause of action for trespass is designed to protect *possessory* —not necessarily ownership—*interests* in land from unlawful interference. [Citations.]" (*Smith* v. *Cap Concrete, Inc., supra*, 133 Cal.App.3d 769, 774.)

■ It is clearly the Capogeannises' theory that any acts of trespass for which the Spences might be liable occurred before the Spences sold the land to the Capogeannises, and thus at a time when the Spences as owners held, subject to no limitation other than that represented by Tri-Pallet's leasehold, all residual possessory rights in the land. Manifestly one cannot commit an actionable interference with one's own possessory right. (Cf., e.g., *Wellesley Hills Realty Trust* v. *Mobil Oil Corp.* (D.Mass 1990) 747 F.Supp. 93, 99.)

In response to our questions, the Capogeannises have taken the position that their trespass theory against the Spences depends on the provision of section 161, subdivision (1) of the Restatement Second of Torts that "[a] trespass may be committed by the continued presence on the land of a structure, chattel, or other thing which the actor has tortiously placed there . . . ."

The crux of the Capogeannises' argument is their assertion that any "tortious" conduct can give rise to a continuing trespass under the rule suggested by section 161, subdivision (1), and thus that if the Spences' actual or vicarious participation in deposition of petroleum hydrocarbons in the soil and groundwater on their own land can be regarded as tortious in its inception then the Spences may be liable to the Capogeannises, as their successors in title, for trespass. The Capogeannises assert that the Spences' alleged participation was, in light of regulatory proscriptions upon contamination of this kind, both a nuisance and negligence per se and thus tortious on either basis.

Assuming without deciding that the Capogeannises' construction of Restatement section 161, subdivision (1) is correct, we nevertheless conclude that the Capogeannises have not sufficiently identified *tortious* conduct by the Spences. The authors define "tortious," for this purpose, as "denoting the fact that conduct . . . is of such a character as to subject the actor to liability under the principles of the law of Torts." (Rest.2d Torts, § 161, com. a, citing *id.* § 6.) For want of a specifically identifiable plaintiff Spence's alleged participation in contaminating the soil and groundwater can be considered at most a public nuisance, "one which affects at the same time an entire community or neighborhood, or any considerable number of persons . . . ." (Civ. Code, § 3480.) Under California law a public nuisance will be a basis for *tort* remedies for personal harm or property damage only if the plaintiff can "show special injury to himself of a character different in *kind*—not merely in degree—from that suffered by the general public." (*Institoris* v. *City of Los Angeles, supra*, 210 Cal.App.3d 10, 20.) Nothing implicit in the kind of contamination of one's own land alleged in this case necessarily identifies a particular plaintiff or connotes the kind of qualitatively different injury that would subject the actor to tort liability.

We conclude that the Capogeannises have not stated, and in our view cannot state, a sustainable trespass theory against the Spences. No further analysis is required to establish that the Capogeannises were properly precluded from pursuing that theory. (Cf. *Robinson* v. *Hewlett-Packard Corp., supra*, 183 Cal.App.3d at p. 1131.)

### 2. Statute of Limitations

Thus we reach the question whether, in support of their motion for summary judgment or summary adjudication and on essentially undisputed facts, the Spences and Tri-Pallet established as a matter of law that the Capogeannises' nuisance theory, and their trespass theory against Tri-Pallet, were barred by the three-year statute of limitations. (Cf. Code Civ. Proc., § 437c, subds. (c), (f).)

The answer depends on long-established distinctions between *permanent* and *continuing* nuisances and trespasses. The analysis is essentially the same for trespass as it is for nuisance. (*Mangini* v. *Aerojet-General Corp., supra*, 230 Cal.App.3d at p. 1148.) For convenience of statement and citation we shall for the most part refer only to nuisance, but our conclusions apply as well to the Capogeannises' trespass theory against Tri-Pallet.

If a nuisance is *permanent*, then in the ordinary case the plaintiff must "bring one action for all past, present and future damage within three

years after the permanent nuisance is erected. [Citations.] . . . Damages are not dependent upon any subsequent use of the property but are complete when the nuisance comes into existence. [Citation.]" (*Baker* v. *Burbank-Glendale-Pasadena Airport Authority* (1985) 39 Cal.3d 862, 869 [218 Cal.Rptr. 293, 705 P.2d 866].) If, on the other hand, the nuisance is *continuing*, then "[e]very repetition of [the] continuing nuisance is a separate wrong," subject to a new and separate limitation period, "for which the person injured may bring successive actions for damages until the nuisance is abated, even though an action based on the original wrong may be barred" (*Phillips* v. *City of Pasadena* (1945) 27 Cal.2d 104, 107-108 [162 P.2d 625]), but "[r]ecovery is limited . . . to actual injury suffered [within the three years] prior to commencement of each action" (*Baker* v. *Burbank-Glendale-Pasadena Airport Authority, supra,* 39 Cal.3d at p. 869; cf. *Mangini* v. *Aerojet-General Corp., supra,* 230 Cal.App.3d 1125, 1148) and "[p]rospective damages are unavailable." (*Baker* v. *Burbank-Glendale-Pasadena Airport Authority, supra,* 39 Cal.3d at p. 869.)

Perhaps the clearest explanation of California's rationale for these distinctions, and of how the distinctions are to be drawn in particular cases, was provided by Justice Traynor in *Spaulding* v. *Cameron* (1952) 38 Cal.2d 265 [239 P.2d 625]:

"In early decisions of this court it was held that it should not be presumed that a nuisance would continue, and damages were not allowed for a decrease in market value caused by the existence of the nuisance but were limited to the actual physical injury suffered before the commencement of the action. [Citations.] The remedy for a continuing nuisance was either a suit for injunctive relief or successive actions for damages as new injuries occurred. Situations arose, however, where injunctive relief was not appropriate or where successive actions were undesirable either to the plaintiff or the defendant or both. Accordingly, it was recognized that some types of nuisances should be considered permanent, and in such cases recovery of past and anticipated future damages were allowed in one action. [Citations.]

"The clearest case of a permanent nuisance or trespass is the one where the offending structure or condition is maintained as a necessary part of the operations of a public utility. Since such conditions are ordinarily of indefinite duration and since the utility by making compensation is entitled to continue them, it is appropriate that only one action should be allowed to recover for all the damages inflicted. It would be unfair to the utility to subject it to successive suits and unfair to the injured party if he were not allowed to recover all of his probable damages at once. [Citation.]

"A more difficult problem is presented, however, if the defendant is not privileged to continue the nuisance or trespass but its abatement is impractical or the plaintiff is willing that it continue if he can secure full compensation for both past and anticipated future injuries. To attempt categorically to classify such a nuisance as either permanent or not may lead to serious injustice to one or the other of the parties. Thus, if the plaintiff assumes it is not permanent and sues only for past damages, he may be met with the plea of res judicata in a later action for additional injury if the court then decides the nuisance was permanent in character from its inception. [Citation.] Similarly, if the initial injury is slight and plaintiff delays suit until he has suffered substantial damage and the court then determines that the nuisance was permanent, the defendant may be able to raise the defense that the statute of limitations ran from the time of the initial injury. [Citation.] On the other hand, if the defendant is willing and able to abate the nuisance, it is unfair to award damages on the theory that it will continue. [Citations.]

"Because of these difficulties it has been recognized that in doubtful cases the plaintiff should have an election to treat the nuisance as either permanent or not. [Citations.] If the defendant is not privileged to continue the nuisance and is able to abate it, he cannot complain if the plaintiff elects to bring successive actions as damages accrue until abatement takes place. [Citations.] On the other hand, if it appears improbable as a practical matter that the nuisance can or will be abated, the plaintiff should not be left to the troublesome remedy of successive actions. [Citations.]" (38 Cal.2d at pp. 267-269; cf. also *Phillips* v. *City of Pasadena, supra,* 27 Cal.2d 104, 107-108; *Kafka* v. *Bozio* (1923) 191 Cal. 746, 750-752 [218 P. 753, 29 A.L.R. 833].)

The great weight of California authority has articulated the basic distinction between permanent and continuing nuisances in broad terms of whether the nuisance can be discontinued, or abated, "at any time": "[I]f the nuisance may be discontinued at any time it is considered continuing in character." (*Phillips* v. *City of Pasadena, supra,* 27 Cal.2d 104, 107-108; cf. also, e.g., *Baker* v. *Burbank-Glendale-Pasadena Airport Authority, supra,* 39 Cal.3d 862, 869; *Spaulding* v. *Cameron, supra,* 38 Cal.2d 265, 267-268; *Kafka* v. *Bozio, supra,* 191 Cal. 746, 751.) The relatively recent Court of Appeal opinion in *Field-Escandon* v. *DeMann* (1988) 204 Cal.App.3d 228, 234 [251 Cal.Rptr. 49], apparently focusing on the semantics of the term "continuing nuisance" rather than on the term's jurisprudential background as explained in *Spaulding,* proposed a different rubric: "The salient feature of a continuing trespass or nuisance is that its impact may vary over time." Subsequent Court of Appeal opinions have acknowledged *Field-Escandon*'s proposal but have explicitly or implicitly recognized that "[m]ost cases . . .

analyze the condition to determine whether the nuisance/trespass may be discontinued." (*Spar* v. *Pacific Bell* (1991) 235 Cal.App.3d 1480, 1485 [1 Cal.Rptr.2d 480]; cf. also *Mangini* v. *Aerojet-General Corp., supra,* 230 Cal.App.3d 1125, 1147 [concluding complaint could be amended to meet either rubric].)

It should be apparent, however, that the discontinued-or-abated rubric cannot be mechanically applied. It may be assumed that if it can reasonably be foreseen that a nuisance *cannot* in any event be abated, the nuisance must be regarded as permanent. But it would be a rare case in which an alleged nuisance could *not* be abated were countervailing considerations (such as expense, time, and legitimate competing interests) disregarded. Thus, for example, in a strictly literal sense even a nuisance represented by an encroaching building or an underlying public utility pipeline might be discontinued or abated, "at any time," by tearing down the building or digging up the pipeline. But as *Spaulding* makes clear, it was for just such situations that the concept of permanent nuisance, as an exception to the preexisting rule that all nuisances should be treated as abatable and thus continuing, was developed: Regardless of literal abatability, where as a *practical* matter either abatement or successive lawsuits would be inappropriate or unfair then the nuisance may be regarded as permanent and the plaintiff relegated to a single lawsuit, subject to a single limitation period, for all past and anticipated future harms. This practical qualification of a too-literal abatability rule was implicitly recognized in two recent Court of Appeal decisions, involving public-utility installations, on which the Spences rely. (*Spar* v. *Pacific Bell, supra,* 235 Cal.App.3d 1480, 1486 [25-year-old telephone conduits, wires, and manhole, originally intended to be serviceable for at least 100 years, constituted a permanent nuisance even though the telephone company in fact removed them before trial but apparently after the plaintiffs filed their lawsuit]; *Field-Escandon* v. *DeMann, supra,* 204 Cal.App.3d 228, 234 [25-year-old sewer pipe, buried 8 feet beneath plaintiff's property, constituted a permanent nuisance].) Because a literal answer to the question whether a particular nuisance can be discontinued or abated will not invariably serve the purposes of the rules as discussed in *Spaulding,* the discontinued-or-abated rubric should be regarded as no more than a convenient shorthand for the fundamental considerations *Spaulding* outlined.

Over the years the courts, presumably mindful of the genesis of permanent nuisance as a practical exception to a preferred rule, have maintained a preference for finding a *continuing* nuisance, both to protect the plaintiff from "contingencies" such as unforeseen future injury and the statute of limitations itself (*Baker* v. *Burbank-Glendale-Pasadena Airport Authority,*

*supra*, 39 Cal.3d 862, 870, citing and quoting from *United States* v. *Dickinson* (1947) 331 U.S. 745, 749 [91 L.Ed. 1789, 1794, 67 S.Ct. 1382]) and to encourage abatement of nuisances (*Mangini* v. *Aerojet-General Corp., supra,* 230 Cal.App.3d 1125, 1148; *Baker* v. *Burbank-Glendale-Pasadena Airport Authority, supra,* 39 Cal.3d 862, 872; *Kafka* v. *Bozio, supra,* 191 Cal. 746, 752). And the courts have consistently adhered to *Spaulding*'s rule that in a case in which the distinction between permanent and continuing nuisance is close or doubtful the plaintiff will be permitted to *elect* which theory to pursue. (Cf., e.g., *Mangini* v. *Aerojet-General Corp., supra,* 230 Cal.App.3d 1125, 1145; *Baker* v. *Burbank-Glendale-Pasadena Airport Authority, supra,* 39 Cal.3d 862, 870.)

In this action neither side initially addressed the distinction between permanent and continuing nuisance.

The Capogeannises' complaint pled nuisance in broad terms. It did not characterize the nuisance as permanent or continuing, and did not refer, one way or the other, to whether the nuisance could be discontinued or abated or to whether its impact would vary. The Capogeannises did allege that "they will in the future incur further damages . . ."; recovery of such "future damages" would be inconsistent with a theory of continuing nuisance (*Baker* v. *Burbank-Glendale-Pasadena Airport Authority, supra,* 39 Cal.3d 862, 869), but the Capogeannises did not explicitly pray for recovery of future damages and in any event the prayer normally is not regarded as part of the cause of action. (Cf. 4 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 447, pp. 491-492; cf. also *Mangini* v. *Aerojet-General Corp., supra,* 230 Cal.App.3d 1125, 1147-1148.)

In their motion for summary judgment or summary adjudication the Spences did not explicitly address the question whether the contamination would amount to a permanent or a continuing nuisance, but necessarily assumed the nuisance was permanent: Their argument was, in relevant part, that the three-year statute had run from the inception of the contamination, and that because the Capogeannises had been aware of the contamination for more than three years they could not rely on a theory of delayed discovery (cf. generally, *CAMSI IV* v. *Hunter Technology Corp.* (1991) 230 Cal.App.3d 1525, 1536 [282 Cal.Rptr. 80]) to toll the statute.

In reply to the Spences' motion the Capogeannises raised no issue of fact. Nor did they assert that they could rely on a theory of delayed discovery. In essence they conceded that if the nuisance were found to be permanent then their theory was barred by the three-year statute. But to demonstrate that the Spences were not entitled to such a finding as a matter of law, and therefore

that the nuisance theory should not be foreclosed by summary adjudication, the Capogeannises for the first time interjected an explicit contention that the asserted nuisance should be deemed *continuing,* or at least that the question was close or doubtful and that the Capogeannises should be deemed to have elected (or should now be permitted to elect) a theory of continuing nuisance. In support of their position the Capogeannises submitted the declaration of a registered geologist and registered environmental assessor, who stated that the soil and groundwater remained contaminated but that the contamination "is abatable through environmental remediation. The soil may be remediated through implementing a vapor extraction system or by excavation. The groundwater may be remediated through implementing a groundwater pump and treat system, bioremediation, or a combination of both technologies." In a footnote to their points and authorities the Capogeannises acknowledged that their complaint did not "specify whether the nuisance is continuing or permanent," but offered to amend their complaint "to allege continuing nuisance . . . if the court so requires."

To counter the Capogeannises' contention that the asserted nuisance was continuing, the Spences and Tri-Pallet were now required to establish as a matter of law *either* that the nuisance was in fact permanent *or* that the Capogeannises had irreversibly bound themselves to a theory of permanent nuisance. The Spences' reply to the Capogeannises' opposition appears to have advanced both arguments.

To establish that the nuisance was in fact permanent the Spences submitted the declaration of their own expert that "[a]lthough the soil and groundwater contamination might be remediated to a level acceptable to the Santa Clara Valley Water District and the Central Coast Regional Water Quality Control Board, the contamination is not entirely abatable because there will always be some residual contamination regardless of the technology or combination of technologies used." On the basis of their expert's declaration the Spences argued that the nuisance must be characterized as permanent: "The subject property will remain contaminated indefinitely since the contamination will never be entirely eradicated or abated despite the best cleanup efforts."

Upon the premise that characterization of the nuisance might be close or doubtful, the Spences added an assertion that in any event the Capogeannises should not now be permitted to amend their complaint because they had "offered no reasonable excuse for delay" in proposing the amendment. Implicit in this assertion is an assumption that the complaint as filed had stated, or should be deemed to state, a theory of permanent nuisance.

At hearing, respondent court stated its belief that a continuing nuisance "ought to require some continuing conduct on behalf of the defendant," and

also referred to "delayed discovery." Ultimately, the court granted summary adjudication as to the nuisance and trespass theories, among others, and denied leave to amend the complaint.

It is not clear from the record whether respondent court was persuaded by the first, the second, or both of the Spences' arguments, but in this court the point need not be resolved. **(6)** In reviewing an order granting summary adjudication of issues, as we would on appellate review of a summary judgment, "after examining the facts before the trial judge . . . , we independently determine their effect as a matter of law. [Citation.] . . . We review the ruling, not its rationale." (*California Aviation, Inc.* v. *Leeds* (1991) 233 Cal.App.3d 724, 730-731 [284 Cal.Rptr. 687]; cf. also *Squaw Valley Ski Corp.* v. *Superior Court* (1992) 2 Cal.App.4th 1499, 1506 [3 Cal.Rptr.2d 897]; *Heredia* v. *Farmers Ins. Exchange, supra,* 228 Cal.App.3d at p. 1353.)

In support of their argument to this court that the nuisance and trespass were abatable, and therefore continuing rather than permanent, the Capogeannises rely heavily on *Mangini* v. *Aerojet-General Corp., supra,* 230 Cal.App.3d 1125, in which another Court of Appeal concluded in a pleading case that toxic contamination can be a continuing nuisance so long as it is abatable.

The Spences (and, by adoption of their position, Tri-Pallet) argue that *Mangini* is factually distinguishable from this case because in *Mangini* the disposal of hazardous materials "clearly . . . [was] the result of 'disposal practices' over time" while in this case "the injury or harm . . . occurred largely upon the release of gasoline and diesel fuel from the tanks at an undetermined date. Thus, the injury and consequential damages occurred largely at that point in time." The record does not support the defendants' characterization of how the harm initially occurred. ▮ In any event the initiating event would not be of dispositive significance: *Mangini* itself made clear, on the basis of sound precedent, that "the 'continuing' nature of the nuisance refers to the continuing [but abatable] damage caused by the offensive condition, not to the acts causing the offensive condition to occur." (230 Cal.App.3d at p. 1147.) It is undisputed that the condition in this case continues to cause harm.

Next the Spences and Tri-Pallet argue that in any event the asserted nuisance in this case is, as a matter of law, not abatable, in that (1) the Spences' expert's declaration establishes the contamination cannot be completely eradicated but at best can be reduced to levels acceptable to the regulatory agencies, and (2) even this reduction cannot be effected (in the words of the rubric) "at any time" but will require many years to complete.

The Capogeannises do not quarrel with the defendants' two factual premises. They acknowledge in essence that they may be unable to prove the contamination can be wholly removed from the soil and groundwater. And although they assert (and the Spences' expert cannot deny) that they *can* reduce contamination to officially acceptable levels, it may be inferred from the record as a whole that the reduction will be a slow and uncertain process, in some measure dependent on variables such as climatic conditions.

■ But the Capogeannises assert, and we conclude as a matter of law, that the defendants' premises do not compel a conclusion that the nuisance was permanent. At the very least the question whether this was a permanent or a continuing nuisance was so close or doubtful as to empower the Capogeannises to proceed on a theory of continuing nuisance.

Our conclusion is influenced primarily by policy considerations identified in *Spaulding* and cognate cases. First and foremost, today's environmental awareness establishes beyond argument that there is simply no legitimate interest to be served by permitting this contamination to persist. Conversely, the well-documented tendency of such contamination to migrate, particularly in groundwater, strongly supports a conclusion that the contamination should be cleaned up as promptly and as thoroughly as possible. Both considerations support application, in this case, of the courts' general preference for a finding of continuing nuisance (or, at least, of a question close enough to empower the Capogeannises to proceed upon that theory). Such a finding will tend to encourage private abatement, and perhaps monetary cooperation in abatement efforts, if only to limit successive lawsuits. (Cf. *Mangini* v. *Aerojet-General Corp.*, *supra*, 230 Cal.App.3d 1125, 1148; *Baker* v. *Burbank-Glendale-Pasadena Airport Authority*, *supra*, 39 Cal.3d 862, 872.) On the other hand, a finding that the nuisance is permanent would leave the Capogeannises with private recourse barred, and with no practical motivation to proceed promptly and efficiently beyond that provided by the enforcement practices of governmental agencies acting at public expense. Once the storage tanks were removed, long before the Capogeannises' complaint was filed, there were in this case none of the "solid structures" such as buildings, railroads, or pipelines that have supported findings of permanent nuisance in other cases. (Cf., e.g., *Baker* v. *Burbank-Glendale-Pasadena Airport Authority*, *supra*, 39 Cal.3d 862, 869; *Spar* v. *Pacific Bell*, *supra*, 235 Cal.App.3d 1480, 1486; *Field-Escandon* v. *DeMann*, *supra*, 204 Cal.App.3d 228, 234.) That in this case abatement efforts may take considerable time and may never be wholly successful should not be permitted to dictate a result that would lessen incentives to proceed as promptly and effectively as possible to abate the contamination.

We are not persuaded by the Spences' essentially semantic argument that because it does not appear the contamination can ever be *wholly* removed the

nuisance must be deemed permanent. We are satisfied to presume that cleanup standards set by responsible public agencies sufficiently reflect expert appraisal of the best that can be done to abate contamination in particular cases. As judges we will not presume to insist upon absolutes these agencies do not require.

We also consider it appropriate, in this private action for damages, to view the nuisance from the plaintiffs' perspective. From that perspective we find no indication that in and of itself the contamination was in any sense harmful (or that its continuation would be harmful) to the Capogeannises or to their property interests. The Capogeannises appear to have been unaware of the contamination until regulatory agencies called the possibility of contamination to their attention, insisted that tests be made, and then (when the tests were positive) insisted that the contamination be cleaned up. Until the contamination was discovered, the record does not suggest that it had any impact upon any use either the Capogeannises or a tenant had made or might make of the land or upon its market value should the Capogeannises choose to sell it. Obviously, environmental contamination is no respecter of property lines and is a legitimate subject of grave concern to society as a whole; the Capogeannises appear to question neither the right of the regulatory agencies to demand cleanup nor their own duty to respond to the demand. But at least as a practical matter the only impact of the contamination upon the Capogeannises is by way of the regulatory agencies' demands. When those demands have been met, so far as the Capogeannises are concerned the nuisance will be abated.

*Mangini* pointed out that "[w]hether contamination by toxic waste is a permanent or continuing injury is ordinarily a question of fact turning on the nature and extent of the contamination. [Citations.]" (230 Cal.App.3d at p. 1148.) Arguably the record before us would support a legal conclusion that this was a continuing nuisance; at worst the record does not afford a clear answer to the question and for that reason the Capogeannises were empowered to pursue their limited remedies for continuing nuisance.

▆ In response to this conclusion the Spences and Tri-Pallet would rely on their assertions that in fact the Capogeannises, by the allegations of their complaint, had elected or should be deemed to have elected to proceed on a theory of permanent nuisance, and that by the time they sought leave to amend their pleading it was too late for them to rescind their election.

We reject both assertions.

The complaint (discounting its legally insignificant reference to *relief* that would be appropriate only to permanent nuisance) simply does not address

the question whether the nuisance should be considered permanent or continuing. To *deem* such a pleading an election of permanent nuisance would be to reject the law's clearly stated preference for continuing nuisance.

But even were we to assume that the Capogeannises had purported to elect a theory of permanent nuisance, we would conclude that the Capogeannises could not be deemed bound because the purported election would have been illusory: At the time the Capogeannises filed their complaint a theory of permanent nuisance was already barred by the statute of limitations defense that both defendants promptly asserted, and thus the Capogeannises in fact had no meaningful election to make. At least since *Agar* v. *Winslow* (1899) 123 Cal. 587, 590-591 [56 P. 422], California courts have made clear that a plaintiff's decision to pursue, even to a defense judgment, a theory that was not available to him or her at the time of suit will not bar subsequent pursuit of a viable alternative theory. (Cf. generally, 3 Witkin, Cal. Procedure (3d ed. 1985) Actions, §§ 143-144, pp. 172-174.)

As a practical matter, clarification of remedies in a case, such as this one, where remedies for permanent nuisance or trespass are already time-barred at the time of suit, will be effected exactly as it was in this case: The defendant or defendants will pursue the issue by appropriate motions, which will be disposed of by determining whether the nuisance or trespass is or is not clearly permanent in nature. Any delay in seeking clarification, and thus any conceivable prejudice attributable to the delay, will be within the control of the defendant or defendants. In this case both defendants immediately recognized the availability of a statute of limitations defense, and astutely avoided a waiver by raising the defense in their answers (cf. 3 Witkin, Cal. Procedure, *supra*, § 314, p. 345), but then chose to wait more than a year before bringing the issue to decision by a motion for summary adjudication. We find no colorable showing of prejudice by virtue of the delay, but any prejudice there may be must be attributed to the defendants' own tactical decisions.

We by no means intend to encourage plaintiffs to delay an election between continuing and permanent nuisance or trespass in a case which admits of such an election. The better practice would be to manifest the election in the complaint if possible, and in any event the election must be clear enough and timely enough to avoid prejudice to the defendant. (Cf. generally 3 Witkin, Cal. Procedure, *supra*, §§ 135-142, pp. 163-171.) In this case we conclude simply that there was no election to make.

Because this is so, and because the Capogeannises have now made clear that they do intend to pursue their unbarred claim for continuing

nuisance and trespass, limited to recovery for actual injury suffered within the three years immediately preceding December 14, 1990, we perceive no purpose to be served by requiring that they amend their complaint or by mandating respondent court to permit them to do so.

At the same time we should not be understood to conclude that the Capogeannises will necessarily prevail upon the merits of these theories or any of them. That is a matter that can only be resolved upon further proceedings in respondent court.

The parties, with sufficient notice that a peremptory writ might issue in the first instance (cf. *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 177-183 [203 Cal.Rptr. 626, 681 P.2d 893]), have briefed the issues and upon the court's invitation have appeared at and participated in oral argument.

Let a peremptory writ of mandate issue, directing respondent court to vacate so much of its order filed August 14, 1992, as grants the motion of William and Rita Spence for a summary adjudication that the plaintiffs' nuisance theories against the Spences and Tri-Pallet, Inc., and their trespass theory against Tri-Pallet, Inc., were barred by the statute of limitations, and to issue an amended or supplemental order to provide that as to these enumerated theories the said motion is denied.

Cottle, Acting P. J., and Elia, J., concurred.