Filed 11/14/14  Wu v. San Diego Gas & Electric Co. CA4/1
## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| GEORGE SHEN-CHIH WU et al., | D064045 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2011-00095729-CU-CR-CTL) |
| SAN DIEGO GAS & ELECTRIC COMPANY, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Joel M.

Pressman, Judge.  Affirmed.

George Shen-Chih Wu and Helen Mei-Hwei Wu, in pro. per.

Raul Olamendi Smith for Defendant and Respondent.

Plaintiffs and appellants George Shen-Chih Wu and Helen Mei-Hwei Wu[1] appeal

a summary judgment in favor of defendant and respondent San Diego Gas & Electric

Company (SDG&E), contending the court erred in finding their cause of action for

nuisance was permanent and therefore barred by the statute of limitations.  Plaintiffs

_____

[1]    We refer to Helen Wu by her first name to avoid confusion.

contend that under the Poway municipal code, a utility pole and overhead electrical lines SDG&E installed on their property were a continuous nuisance. Plaintiffs further contend the court erroneously sustained SDG&E's objections to two declarations plaintiffs submitted in opposition to the summary judgment motion, and there was cumulative error. We conclude plaintiffs' contentions lack merit and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

In approximately 1959, SDG&E installed a utility pole and overhead electrical lines on plaintiffs' property located on Creek Road in the City of Poway (Poway). In 1963, SDG&E acquired a 12-foot wide right of way over the subject property, permitting it to ingress and egress the property, place a line of poles and wires within the described span of land, and erect, construct, repair, replace, maintain and use a line of poles and wires.

In 2002, SDG&E and Helen Wu contracted to bury the poles and wires pursuant to a tariff rule stating: "[W]hen mutually agreed upon by [SDG&E] and an applicant, overhead electric facilities may be replaced with underground electric facilities, provided the applicant requesting the change pays in advance, a nonrefundable sum equal to the estimated cost of the underground facilities less the estimated net salvage value and depreciation of the replaced overhead facilities. Underground services will be installed

[2] The facts are taken from the separate statement of undisputed facts.

2

and maintained as provided in the Utility's rules applicable thereto." Plaintiffs paid $38,131 toward the undergrounding.

Plaintiffs later abandoned the agreement to underground the electrical installations, although SDG&E gave them a one-year extension with no price adjustment. In 2004, SDG&E refunded the $38,131.

In 2011, Plaintiffs sued Poway and SDG&E regarding the electrical installations. In January 2012, plaintiffs filed an operative second amended complaint, alleging a nuisance cause of action against SDG&E for violating Poway's general plan. Plaintiffs alleged that the plan stated Poway "seeks to 'maintain high quality design' and to 'develop an attractive streetscape which reflects the rural small town character of the City' " and additionally that, "All utilities, except electrical lines carrying more than 34.5 KV, should be located underground."

Plaintiffs also relied on Poway Municipal Code section 8.72.020, which defines a nuisance to include "the violation of any ordinance, resolution, regulation or policy adopted by the City Council as defined within any such ordinance, resolution, regulation or policy, or any condition within the City found to be a potential threat to the general health, safety and welfare of the public."

Plaintiffs alleged they had suffered the following harm: "[T]he electrical transformer and power lines maintained by SDG&E on Plaintiffs' property are designed to spark, and in so doing, constitute a fire hazard. The existence of above-ground utility equipment on Plaintiffs' property constitutes an ongoing public and private nuisance. The above-ground utility equipment owned by SDG&E remains on Plaintiffs' property as of

3

the present time. [¶] . . . [T]he electrical transformer, power poles, and overhead power lines maintained by SDG&E on and over Plaintiffs' property are injurious to life and health, and hinder the free and unobstructed use and enjoyment of Plaintiffs' property, thereby constituting a public and/or private nuisance as that term is defined in California Civil Code Section 3479, et. seq." Plaintiffs added, "As a proximate result of the nuisance, Plaintiffs have been damaged in the amount of the difference of the value of their real property with and without under-grounding of the above-ground dry utilities along Creek Road on the subject property. Unless the nuisance is abated, Plaintiffs' property will be progressively further diminished in value."

SDG&E moved for summary judgment on grounds that to any extent the electrical installations may be regarded as a nuisance, plaintiffs' claim related to a permanent nuisance and not a continuous one; therefore, the claim was barred under the three-year statute of limitations. (Code Civ. Proc., § 338, subd. (b).)

Plaintiffs opposed SDG&E's motion, arguing a triable issue of material fact existed regarding whether the nuisance was continuous or permanent. Plaintiffs submitted supporting declarations by Rex Edmonds and Helen.

Edmonds, a civil engineer, a licensed general constructor and a certified professional estimator, stated in his declaration he has been "involved in the design and field engineering of industrial, highway, bridge projects, water/sewage treatment and disposal, residential, office/professional, structured care and medical facilities, manufacturing, material-handling, and food processing facilities, transportation, communications, education, aerosol & chemical facilities construction." He stated that

4

he has constructed "Industrial, Commercial, Professional/Office, Institutional, Multi-family Residential, Public Utilities, Transportation, Parking and Municipal Projects."

Edmonds asserted that upon inspection of plaintiffs' property, he "observed a wooden utility pole, overhead electrical lines, and a pole mounted oil-immersed distribution transformer (the 'Nuisance') on the Subject Property." Edmonds added: "Upon failing, a pole mounted oil-immersed distribution transformer is known to cause brush fires. The cause of the failure is varied, but includes the following: insulation failures, oil contamination, overloading, fire/explosion, line surge, lightning, moisture, and aging. Edmonds described the potential harm to plaintiffs: "In addition, severe winds can cause overhead electrical lines to come in contact with one another and/or trees to come in contact with the overhead electrical lines resulting in brush fires. Further, downed overhead electrical lines caused by severe winds also result in brush fires."

Finally, Edmonds addressed possible abatement: "The life expectancy of a wooden utility pole is 35 years. Based on my inspection of the utility pole on the Subject Property, it is my opinion that Power Pole number P246447 appears to have been replaced since 1959."[3] Edmonds asserted, "SDG&E's stated estimated cost to remove the

---

[3]     The sole disputed fact plaintiffs raised in the summary judgment motion related to whether the utility pole appeared to have been replaced since it was first installed. SDG&E asserted: "The Property contains Power Pole number P246447 which has been in the same condition minus reparative work, since at least 1959." Plaintiffs responded: "Disputed. The existing pole appears to have been replaced. The life expectancy of a wooden utility pole is approximately 35 years."

'existing facilities' was $8779.00, which in my opinion is a reasonable estimate to abate the Nuisance."

SDG&E objected to Edmonds's declarations primarily on grounds that under Evidence Code sections 720 and 801, he had "[i]nsufficient qualification as an expert upon the subject matters and opinions testified to in [his] declaration"; in particular, he did not state he knew about "electrical facilities, specifically overhead electrical facilities."

Helen's declaration stated: "[In] 2001, SDG&E acknowledged that the City of Poway required [plaintiffs] to 'convert the electric lines on [the Subject Property] to underground' as a condition of developing the Subject Property." She stated that in August 2003, Corky McMillin Companies installed SDG&E conduits along Creek Road to accommodate the undergrounding of the existing overhead utilities. She asserted that in 2009, an SDG&E contractor or employee communicated to her that " 'the hardware on the power line i[s] designed to spark when it fails potentially causing a fire.' " Helen continued, "SDG&E admits their equipment could spark but 'maintains and repairs its equipment to avoid such and pursuant to the General Orders concerning vegetation around the base of the pole so that if a spark occurs nothing will ignite.' "

SDG&E objected to Helen's declaration on grounds her statements were irrelevant, lacked foundation or were not based on personal knowledge. The court sustained SDG&E's objections to Edmonds's and Helen's declarations. It then granted summary judgment in favor of SDG&E: "A permanent trespass or nuisance is one where it will be presumed to continue indefinitely. The clearest case of permanent nuisance or trespass is

6

one where the offending structure or condition is maintained as a necessary part of the operations of a public utility company. [Citations.] [¶] The evidence in this case shows that the power pole and accompanying electrical facilities located on the property [have] existed since 1959. The Wus acknowledge that the Power Pole and the accompanying facilities have been in the same condition on their property since they moved onto the property in 2002, and since they owned the property in 2004. The statute of limitations has run."

## DISCUSSION

### I.

Plaintiffs contend the electrical installations were a continuous nuisance under the Poway Municipal Code and violated the Poway General Plan's requirement that all electrical lines be located underground; therefore, the three-year statute of limitation did not apply because the installations were expeditiously abatable. Plaintiffs argue the electrical installations are a continuous nuisance because they pose dangerous circumstances that are subject to change over time: "At present, the electrical facilities have only the potential for starting a fire. When they actually do, the Plaintiffs' damages will be significantly higher as well as impacting other neighbors by the resulting fire. Also, SDG&E will save money over time. They will not have to maintain the current easement. They will not have to repair and maintain the wooden utility pole and overhead electrical lines. They will also eliminate any potential liability for a fire caused by their equipment. Finally, the Plaintiffs will regain the land currently unusable because of SDG&E's 12[-]foot easement."

7

*Applicable Law*

"[T]he party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) "[I]f he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact." (*Ibid.*) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Ibid.*) The defendant who seeks summary judgment bears the burden of showing that the statute of limitations period "had expired when [plaintiff] filed his action." (*Schmidlin v. City of Palo Alto* (2007) 157 Cal.App.4th 728, 788.) If that burden is met, the plaintiff bears the burden to prove an exception to the statute of limitations. (*Ibid.*) Our review is de novo. (*Carnes v. Superior Court* (2005) 126 Cal.App.4th 688, 694.) " '[I]n practical effect, we assume the role of a trial court and apply the same rules and standards that govern a trial court's determination of a motion for summary judgment.' " (*Ibid.*)

There are differences regarding the running of the statute of limitations in actions to abate permanent nuisances and continuing nuisances. Whether a nuisance is continuing or permanent depends "on the type of harm suffered." (*Baker v. Burbank-Glendale-Pasadena Airport Authority* (1985) 39 Cal.3d 862, 868 (*Baker*).) "[P]ermanent nuisances are of a type where ' "by one act a permanent injury is done, [and] damages are assessed once for all." ' " (*Ibid.*) Nuisances found to be permanent in nature include

8

"solid structures, such as a building encroaching upon the plaintiff's land [citation], a steam railroad operating over plaintiff's land [citation], or regrade of a street for a rail system." (*Id.* at p. 869, fns. omitted.) In the case of a permanent nuisance, damages are "complete when the nuisance comes into existence," and an action must generally be brought "within three years after the permanent nuisance is erected." (*Ibid.*) "In such cases, plaintiffs ordinarily are required to bring one action for all past, present and future damage within three years after the permanent nuisance is erected." (*Ibid.*) Where a landowner has no knowledge of damage caused by such a nuisance, some courts have indicated that the statute of limitations may begin to run when he or she discovers the damage. (*Lyles v. State of California* (2007) 153 Cal.App.4th 281, 286; *Mangini v. Aerojet-General Corp.* (1996) 12 Cal.4th 1087, 1096.)

A nuisance is not permanent, but continuing, if the nuisance "may be discontinued at any time." (*Baker, supra,* 39 Cal.3d at p. 869.) "The classic example of a continuing nuisance is an ongoing or repeated disturbance, such as . . . one . . . caused by noise, vibration or foul odor." (*Ibid.*) A person harmed by a continuing nuisance "may bring successive actions for damages until the nuisance is abated." (*Ibid.*)

Plaintiffs argue that Poway's municipal code and general plan were controlling and supported a finding SDG&E's electrical installations were a continuous nuisance. But California Constitution, article XII, section 8, establishes that "[a] city, county, or other public body may not regulate matters over which the Legislature grants regulatory power to the Commission." "Thus, under the Constitution, as to matters over which the [Public Utilities Commission] has been granted regulatory power, the [commission's] jurisdiction

9

is exclusive." (*Southern Cal. Gas Co. v. City of Vernon* (1995) 41 Cal.App.4th 209, 215; *San Diego Gas & Electric Co. v. City of Carlsbad* (1998) 64 Cal.App.4th 785, 803.) Public Utilities Code section 701 states: "The commission may supervise and regulate every public utility in the State and may do all things, whether specifically designated in this part or in addition thereto, which are necessary and convenient in the exercise of such power and jurisdiction." In light of the commission's statutory authority to regulate the electrical companies, we conclude Poway's local laws and general plan are not controlling here.

The case of *Spar v. Pacific Bell* (1991) 235 Cal.App.3d 1480 (*Spar*) is instructive regarding the issue of whether a utility company's installations are permanent or continuous. There, the defendant telephone company had placed conduits, wires, and a manhole on the plaintiff's property in 1963. "An employee for defendant Pacific Bell testified the facilities were intended to be serviceable for at least 100 years. Heavy equipment was required to install the new equipment and remove the old facilities which were buried 10 feet underground with dirt tightly compacted around them. Plaintiff had no knowledge of the facilities until 1987 when it decided to build a shopping center on the property. Defendant admitted it had no recorded easement of the facilities to remain on the property." (*Id*. at pp. 1482-1483.) The *Spar* court concluded: "[W]e are compelled to come down solidly in favor of a permanent nuisance /trespass in this case by reason of the long standing permanent nature of these underground telephone utility lines." (*Id.* at p. 1486.) The *Spar* court relied on the California Supreme Court's decision in *Spaulding v. Cameron* (1952) 38 Cal.2d 265 (*Spaulding*), which states: "The clearest

10

case of a permanent nuisance or trespass is the one where the offending structure or condition is maintained as a necessary part of the operations of a public utility. Since such conditions are ordinarily of indefinite duration and since the utility by making compensation is entitled to continue them, it is appropriate that only one action should be allowed to recover for all the damages inflicted. It would be unfair to the utility to subject it to successive suits and unfair to the injured party if he were not allowed to recover all of his probable damages at once." (*Spaulding, supra,* at p. 267.)

We conclude SDG&E's electrical installations were "not a continuing or recurring trespass or nuisance, which repeatedly disturbs the property, as in the case of [a] nuisance caused by the operation of an airport . . . [citation], or by the operation of a cotton gin [citation] or the operation of a slant oil drill." (*Field-Escandon v. DeMann* (1988) 204 Cal.App.3d 228, 234.) This is not a case involving the "contamination of land through the dumping of toxic wastes" or similar cases of substances flowing or leaking onto a neighboring property. (*Mangini v. Aerojet-General Corp., supra,* 12 Cal.4th at p. 1090.) This case does not involve an off-property barrier to entry onto one's property, such as a gate on neighboring property. (*Phillips v. City of Pasadena* (1945) 27 Cal.2d 104, 108.) Nor does it involve a nonstructural trespass such as trees falling over a property line. (*Mattos v. Mattos* (1958) 162 Cal.App.2d 41, 42-43.)

We further conclude it would be unfair to expose SDG&E to successive litigation over the electrical installations that it set up in 1959. SDG&E could have reasonably expected the installations would be permanent; further, it acquired the easement rights over the plaintiffs' property in 1963. We note the plaintiffs had initially paid for the

11

undergrounding, but elected to forego it.  Under the facts of this case, it would be unreasonable to conclude the nuisance is continuous.

Plaintiffs attempt to distinguish *Spar, supra,* 235 Cal.App.3d 1480*:*  "The wooden utility pole, overhead electrical lines, and a pole mounted oil-immersed distribution transformer in this case are clearly *not a necessary part of the operations of a public utility* and *not intended to be permanent structures*.  The City of Poway requires they be under-grounded if the Plaintiffs wish to develop the Subject Property.  SDG&E has offered to underground their equipment for a price.  In fact, the street in front of the Subject Property has already been trenched and conduit placed for the relocation of SDG&E's overhead electrical lines."

However, in resolving whether the nuisance is permanent or continuous, it is not dispositive that SDG&E had entered into a preliminary agreement with the plaintiffs to underground the electrical installations.  On this point, *Spar* is illustrative.  Although the defendant had removed the nuisance, the court maintained it was permanent:  "The solitary fact in this case to hint that the nuisance/trespass was continuing was the voluntary removal and relocation of the telephone utility line by the defendant.  We do not know from the record the reason for this voluntary act and refuse to speculate as to the exact reason for this act.  We cannot say this solitary fact either transformed the nuisance into a continuing nuisance or brought into play the benefit of the 'close case' election to be afforded to the plaintiff."  (*Spar, supra,* 235 Cal.App.3d at p. 1486.)

The court in *Capogeannis v. Superior Court* (1993) 12 Cal.App.4th 668 relied on the *Spaulding* case in addressing whether a nuisance was abatable:  "[I]t would be a rare

12

case in which an alleged nuisance could *not* be abated were countervailing considerations (such as expense, time, and legitimate competing interests) disregarded. Thus, for example, in a strictly literal sense even a nuisance represented by an encroaching building or an underlying public utility pipeline might be discontinued or abated, 'at any time,' by tearing down the building or digging up the pipeline. But as *Spaulding* makes clear, it was for just such situations that the concept of permanent nuisance, as an exception to the preexisting rule that all nuisances should be treated as abatable and thus continuing, was developed: Regardless of literal abatability, where as a *practical* matter either abatement or successive lawsuits would be inappropriate or unfair then the nuisance may be regarded as permanent and the plaintiff relegated to a single lawsuit, subject to a single limitation period, for all past and anticipated future harms. . . . Because a literal answer to the question whether a particular nuisance can be discontinued or abated will not invariably serve the purposes of the rules as discussed in *Spaulding*, the discontinued-or-abated rubric should be regarded as no more than a convenient shorthand for the fundamental considerations *Spaulding* outlined." (*Capogeannis, supra,* at p. 678.)

In light of our conclusion that SDG&E's electrical installations were permanent, the applicable three-year statute of limitations had run. (Code Civ. Proc., § 338, subd. (b); *Beck Development Co. v. Southern Pacific Transportation Co.* (1996) 44 Cal.App.4th 1160, 1216.) SDG&E erected the electrical installations in 1959, and therefore using that date for the statute of limitations to commence, the statute expired several decades before the plaintiffs brought their lawsuit in 2011. Even using a later commencement date of the limitations period, such as when the plaintiffs negotiated for SDG&E to bury the

13

electrical installations in 2000 or when SDG&E refunded plaintiffs their money in 2004, in both cases the statute of limitations has expired.

## II.

Plaintiffs contend the trial court erroneously sustained SDG&E's objections to Edmonds's and Helen's declarations.

As a general matter, the qualification of experts may be assessed on summary judgment. (See *Littlefield v. County of Humboldt* (2013) 218 Cal.App.4th 243, 256-257 [affirming summary judgment where opposing party failed to offer qualified expert testimony on an essential issue].) "The same rules of evidence that apply at trial also apply to the declarations submitted in support of and in opposition to motions for summary judgment. Declarations must show the declarant's personal knowledge and competency to testify, state facts and not just conclusions, and not include inadmissible hearsay or opinion." (*Bozzi v. Nordstrom, Inc.* (2010) 186 Cal.App.4th 755, 761 (*Bozzi*).) Such declarations are therefore subject to foundational challenges. "For example, the lack of foundation of an expert's testimony can be as to the expert being qualified, the validity of the principles or techniques upon which the expert relied, or as to the reliability and relevance of the facts upon with the expert relied." (*Howard Entertainment, Inc. v. Kudrow* (2012) 208 Cal.App.4th 1102, 1114.)

" '[T]he qualifications of an expert must be related to the particular subject upon which he is giving expert testimony.' [Citations.] Consequently, 'the field of expertise must be carefully distinguished and limited' [citation], and '[q]ualifications on related subject matter are insufficient.' " (*Howard Entertainment, Inc. v. Kudrow, supra,* 208

14

Cal.App.4th at p. 1115; see also *Hayman v. Block* (1986) 176 Cal.App.3d 629, 642-644 [trial court must consider competency of evidence presented on summary judgment].)

"The declarations in support of a motion for summary judgment should be strictly construed, while the opposing declarations should be liberally construed. [Citation.] This does not mean that courts may relax the rules of evidence in determining the admissibility of an opposing declaration. Only *admissible evidence* is liberally construed in deciding whether there is a triable issue." (*Bozzi, supra*, 186 Cal.App.4th at p. 761.)

Of course, the qualifications of an expert for a plaintiff opposing summary judgment may only be considered where the moving defendant has met its burden, that is, where it has "present[ed] evidence that would preclude a reasonable trier of fact from finding that it was more likely than not that the material fact was true [citation], or [has] establish[ed] that an element of the claim cannot be established, by presenting evidence that the plaintiff 'does not possess and cannot reasonably obtain, needed evidence.' " (*Kahn v. Eastside Union High School* (2003) 31 Cal.4th 990, 1003.)

Before *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, in which the California Supreme Court expressly left open the question of whether a de novo standard or an abuse of discretion standard applies to evidentiary rulings in connection with summary judgment motions (*id.* at p. 535), case law provided that the trial court's evidentiary rulings made on summary judgment are reviewed for abuse of discretion. (See *Walker v. Countrywide Home Loans, Inc.* (2002) 98 Cal.App.4th 1158, 1169.) Although it may be arguable that evidentiary rulings at a summary judgment proceeding, such as lack of

15

foundation, should be reviewed de novo, under any applicable standard of review, we conclude the trial court did not err in excluding Edmonds's and Helen's declarations.

Edmonds did not specify what qualifies him to provide expert testimony regarding whether the electrical installations were a permanent or continuous nuisance. Edmonds is a general contractor, but he did not state or otherwise suggest he had any experience regarding utility poles or overhead electrical wires. In any event, Edmonds's conclusion that the utility post apparently was replaced after its installation and his estimate regarding the cost of replacing the utility post both go to the issue of whether the nuisance was abatable. But as we have concluded the electrical installations were permanent as a matter of law despite the possibility of abatement, there was no prejudice to plaintiffs from the exclusion of Edmonds's declaration.

We likewise conclude the trial court did not err in excluding Helen's declaration based on SDG&E's challenge of this statement as hearsay: "SDG&E conduits were installed by Corky McMillin Companies along Creek Road in front of (the 'Subject Property') that can accommodate the undergrounding of the existing overhead utilities." Helen presents no basis for that assertion. The statement was inadmissible as speculative.

SDG&E also challenged a statement in Helen's declaration that an SDG&E contractor had told her " 'the hardware on the powerlines i[s] designed to spark when it fails potentially causing a fire.' " We conclude that statement does not comply with Evidence Code section 1222 regarding the hearsay exception for an authorized admission because there is no indication the contractor was authorized to speak on SDG&E's behalf. For the statement to be admissible, Helen was required to show " 'the nature of the

16

employee's usual and customary authority, the nature of the statement in relation to that authority, and the particular relevance or purpose of the statement.' " (*O'Neal v. Novartis Consumer Health, Inc.* (2007) 147 Cal.App.4th 1388, 1403.)

SDG&E points out that Helen did not quote the SDG&E employee's complete letter, which goes on to state: "I am inspecting the pole to make the decision of whether or not the pole should be brushed with a 10[-]foot radius to prevent wildfire. [¶] Your pole has a hot tap clamp on it and meets this criteria, it will be brushed in 2-3 months." SDG&E notes that the context for the employee's statement was Public Resources Code section 4292, which states: "Except as otherwise provided in [Public Resources Code] Section 4296, any person that owns, controls, operates, or maintains any electrical transmission or distribution line upon any mountainous land, or forest-covered land, brush-covered land, or grass-covered land shall, during such times and in such areas as are determined to be necessary by the director or the agency which has primary responsibility for fire protection of such areas, maintain around and adjacent to any pole or tower which supports a switch, fuse, transformer, lightning arrester, line junction, or dead end or corner pole, a firebreak which consists of a clearing of not less than 10 feet in each direction from the outer circumference of such pole or tower."

SDG&E points out correctly: "Appellants did not claim or introduce evidence that SDG&E didn't perform the required brushing around the pole. Thus, any concerns related to sparking are ameliorated by the required brush clearing set forth in [Public] Resources Code section 4292. If anything, the statement establishes SDG&E's compliance with the law. Thus any 'sparking' evidence is immaterial to the issues on

17

summary judgment.  The trial court, therefore, was well within its discretion to sustain SDG&E's objections."

Given we found no merit in plaintiffs' challenges to the court's rulings, we reject plaintiffs' claim of cumulative error.

DISPOSITION

The judgment is affirmed.  San Diego Gas and Electric Company is entitled to costs on appeal.

O'ROURKE, J.

WE CONCUR:

McINTYRE, Acting P. J.

IRION, J.