Filed 11/23/15  DeBert v. San Lorenzo Valley Water Dist. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| CHARLENE DeBERT,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>SAN LORENZO VALLEY WATER<br>DISTRICT et al.,<br><br>    Defendants and Respondents. | H041482<br>(Santa Cruz County<br>Super. Ct. No. CISCV176927) |

Plaintiff Charlene DeBert appeals from a judgment of dismissal entered after the trial court sustained demurrers without leave to amend filed by defendants San Lorenzo Valley Water District (the District), Rick Rogers, and James Mueller (collectively, defendants).

Ten months after purchasing a parcel of land in Santa Cruz County, DeBert discovered an underground water pipeline belonging to the District while excavating her property.  The pipeline is not in a recorded easement.  Shortly after DeBert learned about the pipeline, the District's operations manager, Rogers, twice entered her property without permission.  He did so at the direction of the District's general manager, Mueller.  DeBert filed suit against the District and later amended her complaint to assert claims against Rogers and Mueller.  She alleges the pipeline constitutes a trespass and a nuisance and that defendants trespassed and violated her civil rights when Rogers entered her property without permission.

The trial court entered judgment against DeBert after sustaining defendants' demurrer to her third amended complaint without leave to amend. We reverse and remand with directions.

## I.  BACKGROUND

### A.  *Factual Background*

DeBert purchased land in Santa Cruz County in November 2011. There were no easements recorded by the District on record at the Santa Cruz County recorder's office. While excavating the lot in early September 2012, DeBert discovered an underground water pipeline. The District initially told DeBert it did not own the pipeline.

On September 5, 2012, the District entered onto DeBert's property without permission "through the acts of" Rogers and Mueller. On September 25, 2012, Rogers and two deputy sheriffs—acting at Mueller's direction—demanded access to DeBert's property to investigate water theft from a District-owned pipeline. When DeBert asked whether they had a warrant to enter her property, she was told they did not and that they did not need one. Rogers and the deputies threatened to arrest DeBert and to destroy her pet dog if she did not allow them to enter her property. She permitted them to enter. After examining the property, the deputies arrested DeBert for theft and resisting arrest. Rogers and Mueller allegedly were motivated by "their perception of . . . DeBert's sexual orientation."

### B.  *Government Claims Act Claim*

On October 29, 2012, DeBert filed a claim with the District pursuant to the Government Claims Act on a District-provided claim form.[1] The claim stated that

---

[1] In support of its demurrer to the first amended complaint, defendants requested the trial court take judicial notice of DeBert's claim pursuant to Evidence Code section 452. The trial court granted that request.

2

Rogers trespassed on DeBert's property on September 15, 2012,[2] and September 25, 2012, and informed her the District owned water pipelines on her land, which they could access at any time. The claim form requests a "[g]eneral description of the indebtedness, obligation, injury, damage or loss incurred." DeBert wrote: "Negligence of laying pipeline on private property without survey, trespass, taking (inverse condemnation), total loss of property value . . . ." DeBert stated that her injuries were caused by "Rogers, [District engineer] Rob Menzies," and "the entire" District. DeBert's stated "basis for claiming the District or District employee(s)" caused her injury was "Rick Rogers, trespassing on my private property, 9/15/2012, 9/25/2012, . . . Rogers informing on aforementioned dates that [the District] trespass of pipeline and taking."

Along with the District-provided claim form, DeBert submitted two e-mails she had sent to Mueller. In the first e-mail, dated October 14, 2012, she informed Mueller that on and about September 21, 2012, she told District engineer Rob Menzies about a fire hydrant she found on her property a few months earlier while removing forest debris. The second e-mail, dated October 28, 2012, stated: "Rogers['s] heavy handedness in his forcible trespass on my private property has left me very distressed about feeling peaceful enjoyment of my private property. . . . Hopefully, my civil rights will be given more due respect by [the District], going forward into the future."

The District denied DeBert's claim on November 16, 2012.

### C. *The Initial Complaint*

DeBert was representing herself at the time she filed her initial complaint on May 15, 2013, using a Judicial Council form complaint for "Personal Injury, Property Damage, Wrongful Death." The complaint named the District as the sole defendant. In the space on the form for identifying the defendants, DeBert wrote "SLVWD [(the

---

[2] The third amended complaint alleges, inconsistently with the presuit claim, that the first trespass occurred on September 5, 2012.

District)], inverse condemnation, taking of plaintiff's private property." DeBert did not check any boxes on the form related to Doe defendants. She attached the Judicial Council form for a general negligence cause of action to the complaint. That cause of action alleged the District and "Does 1 to 100" had "buried [a] wate[r]line through the lot APN: 090-061-32 without the benefit of an easement" in "approximately" March 1968 or in the 1980s. It further alleged that DeBert purchased the property in November 2011 and discovered the pipeline in September 2012 while digging a ditch. Finally, the complaint alleged the District had "taken private property without just compensation." The initial complaint did not mention Rogers, Mueller, or DeBert's interactions with them in September 2012.

The District demurred to the complaint on the ground it was barred by the statutes of limitations set forth in Code of Civil Procedure[3] sections 338 and 337.15.[4] DeBert, now represented by counsel, opposed the demurrer. She argued her complaint stated a cause of action for civil trespass and was timely filed within three years of her September 2012 discovery of the water pipeline. The trial court sustained the demurrer with leave to amend.

### D. *The First Amended Complaint*

DeBert's first amended complaint, filed on November 14, 2013, added Rogers and Mueller as defendants. Unlike the initial complaint, it alleged the pipeline was constructed "[a]t some unknown time."

The first amended complaint asserted seven causes of action: (1) trespass against the District based on the original construction of the pipeline; (2) trespass against all defendants based on the alleged September 25, 2012, entry onto DeBert's property by

---

[3] Unspecified statutory references are to the Code of Civil Procedure.
[4] The District's demurrer erroneously cited section 337.5, which governs actions on general obligation bonds or coupons.

4

Rogers and two deputies; (3) private nuisance against the District; (4) a claim pursuant to 42 United States Code, section 1983 (section 1983) alleging violation of DeBert's Fourth Amendment right against illegal search and seizure; (5) a section 1983 excessive force claim; (6) a section 1983 "local government policy or custom" claim; and (7) an inverse condemnation claim against the District. The section 1983 claims were premised on the September 25, 2012 incident, during which Rogers and two deputy sheriffs threatened DeBert and her dog.

Defendants demurred on numerous grounds. Among other things, they argued that the addition of Rogers and Mueller as defendants and the assertion of an inverse condemnation claim were outside the scope of the leave to amend granted following their earlier demurrer. The trial court sustained the demurrer without leave to amend as to the section 1983 claims, sustained the demurrer with leave to amend as to DeBert's trespass and nuisance causes of action, and overruled the demurrer as to the inverse condemnation cause of action. No statement of decision was issued. At a hearing on the demurrer, the court indicated the trespass and nuisance causes of action were untimely and the factual basis for the section 1983 claims was not included in DeBert's claim form.

Defendants moved for reconsideration of the order to the extent it overruled the demurrer as to the inverse condemnation cause of action. They argued that "[p]laintiff exceeded the scope granted to her by this Court to amend her complaint by adding two defendants and filing seven causes of action, including Inverse Condemnation." At a hearing on defendants' motion, the court rejected defendants' "very narrow interpretation" of her order granting leave to amend, noting "I didn't say you are not granted leave to amend to assert an inverse condemnation cause of action." Defendants' motion for reconsideration was denied.

### E.     *The Second and Third Amended Complaints*

DeBert filed a second amended complaint on March 20, 2014. Days later she attempted to file a third amended complaint but the court clerk refused to file it.

5

Unaware that the third amended complaint never was filed, defendants demurred to it. DeBert requested a default judgment against defendants on the ground they failed to respond to the second amended complaint. The trial court denied that motion, saying it relied on a "bad faith argument," and accepted the third amended complaint for filing on May 19, 2014.

The third amended complaint asserted six causes of action: (1) trespass against the District based on the original construction of the pipeline (count 1); (2) trespass against all defendants based on the alleged September 5 and 25, 2012, entries onto DeBert's property by Rogers and two deputies (count 2); (3) private nuisance against the District (count 3); (4) inverse condemnation against the District (count 4); (5) violation of the Ralph Act (Civ. Code, § 51.7) against all defendants (count 5); and (6) violation of the Bane Act (*id*., § 52.1) against all defendants (count 6). The Ralph Act claim included the new allegation that Rogers and Mueller were motivated by "their perception of . . . DeBert's sexual orientation."

Defendants' again demurred. They argued that counts 1, 2, and 3 were barred by the statutes of limitations set forth in section 338 and Government Code section 945.6. They claimed count 4 likewise was untimely and was outside the scope of the leave to amend granted following their earlier demurrer. Defendants maintained that counts 5 and 6 also exceeded the scope of the leave to amend and were too uncertain to state a claim for relief. The trial court sustained defendants' demurrer without leave to amend on June 6, 2014. The court did not issue a statement of decision. It entered a judgment of dismissal with prejudice on August 18, 2014. DeBert timely appealed.

II.    DISCUSSION

A.    *Standard of Review*

We review an order sustaining a demurrer de novo, exercising our independent judgment as to whether a cause of action has been stated as a matter of law. (*Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125.) The facts alleged in the

6

pleading are deemed to be true, but contentions, deductions, and conclusions of law are not.  (*Hill v. Roll Internat. Corp.* (2011) 195 Cal.App.4th 1295, 1300.)  In addition to the complaint, we also may consider matters subject to judicial notice.  (*Ibid.*)  Facts that are subject to judicial notice trump contrary allegations in the pleadings.  (*Ibid.*)  We do not review the validity of the trial court's reasoning.  (*B & P Development Corp. v. City of Saratoga* (1986) 185 Cal.App.3d 949, 959.)  For that reason, and because demurrers raise only questions of law, we may also consider new theories on appeal to challenge or justify the trial court's rulings.  (*Ibid.*)

"Where a demurrer is sustained without leave to amend, [we] must determine whether there is a reasonable probability that the complaint could have been amended to cure the defect; if so, [we] will conclude that the trial court abused its discretion by denying the plaintiff leave to amend.  [Citation.]  The plaintiff bears the burden of establishing that it could have amended the complaint to cure the defect."  (*Berg & Berg Enterprises, LLC v. Boyle* (2009) 178 Cal.App.4th 1020, 1035.)

### B.  *Counts 1 and 3 Are Not Time-barred*

DeBert contends counts 1 and 3 in her third amended complaint, which assert claims for trespass and nuisance based on the encroaching pipeline, are timely. Defendants respond that those claims are time-barred, given the allegation in DeBert's original complaint that the pipeline was installed in or before the 1980s.

#### 1.  *General Principles Regarding Statutes of Limitations and the Discovery Rule in the Context of Injury to Real Property*

" 'Critical to applying a statute of limitations is determining the point when the limitations period begins to run.  Generally, a plaintiff must file suit within a designated period after the cause of action *accrues* . . . .' "  (*Nguyen v. Western Digital Corp.* (2014) 229 Cal.App.4th 1522, 1538 (*Nguyen*).)  " 'A cause of action accrues "when [it] is complete with all of its elements"—those elements being wrongdoing, harm, and causation.' "  (*Ibid.*)  "[F]or limitations purposes[,] the harm implicit in a tortious injury

7

to property is harm to the property itself" rather than to the property owner. (*CAMSI IV v. Hunter Technology Corp.* (1991) 230 Cal.App.3d 1525, 1534 (*CAMSI IV*).) Therefore, "the running of the statute of limitations against a claim bars the owner and all subsequent owners of the property. [Citations.] In other words, the statute of limitations does not commence to run anew every time the ownership of the property changes hands." (*Beck Development Co. v. Southern Pacific Transportation Co.* (1996) 44 Cal.App.4th 1160, 1216 (*Beck*).)

The discovery rule operates to postpone accrual, and thus the commencement of the statute of limitations, until the plaintiff discovers the cause of action or could have discovered the cause of action through the exercise of reasonable diligence. (See *Nguyen*, *supra*, 229 Cal.App.4th at p. 1538; *McCoy v. Gustafson* (2009) 180 Cal.App.4th 56, 108 (*McCoy*).) "The limitations period begins once the plaintiff has notice or information of circumstances to put a reasonable person on inquiry." (*McCoy*, *supra*, at p. 180.) Whether the circumstances would put a reasonable person on notice is a question of law that may be resolved on demurrer when the allegations support only one legitimate inference. (*Saliter v. Pierce Brothers Mortuaries* (1978) 81 Cal.App.3d 292, 300.) By contrast, "if the facts alleged [are] susceptible to opposing inferences," then the notice question is one of fact. (*Ibid.*)

The actual and constructive knowledge of a prior landowner is imputed to the current landowner for purposes of the discovery rule. (*CAMSI IV*, *supra*, 230 Cal.App.3d at p. 1537 [if prior landowners "knew or should have known" about property contamination "their knowledge would have been imputed to" current owner-plaintiff].) The rational underlying that rule is that the current owner can sue the prior owner for concealing the defects. (*Valenzuela v. Superior Court* (1992) 3 Cal.App.4th 1499, 1503.)

"A plaintiff whose complaint shows on its face that his or her claim would be barred by the applicable orthodox statute of limitations, and who intends to rely on the discovery rule to toll the orthodox limitation period, 'must specifically plead facts which

8

show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence.  [Citations.]  Mere conclusory assertions that delay in discovery was reasonable are insufficient and will not enable the complaint to withstand general demurrer.' "  (*CAMSI IV*, *supra*, 230 Cal.App.3d at pp. 1536-1537.)

With these principles in mind, we consider the statutes of limitations defendants invoke.

### 2. *Section 338*, *Subdivision* (*b*)

Defendants contend counts 1 and 3 are barred by section 338, subdivision (b), which establishes a three-year limitations period for trespass upon or injury to real property.  DeBert does not dispute that the claims are subject to that limitations period.  Instead, she posits three reasons for why the trial court erred in concluding her claims accrued more than three years before she filed suit.

First, DeBert argues the trial court erred in characterizing the alleged trespass and nuisance as permanent as opposed to continuing.  While her appellate briefs are difficult to follow on this point, her position appears to be that she may plead trespass and nuisance in broad terms, without describing them as permanent or continuing, and make "a pre-trial election of the cause of action that fits the evidence produced."  Defendants do not respond to this argument.

"California law classifies nuisances and trespasses as either continuing or permanent."  (*McCoy*, *supra*, 180 Cal.App.4th at p. 63.)  The distinction is important here because the accrual date of a cause of action for trespass or nuisance is determined, in part, by whether the trespass or nuisance is continuing or permanent.  "The analysis is essentially the same for trespass as it is for nuisance.  [Citation.]  For convenience of statement and citation we shall for the most part refer only to nuisance, but our conclusions apply as well to [plaintiff's] trespass theory . . . ."  (*Capogeannis v. Superior Court* (1993) 12 Cal.App.4th 668, 675 (*Capogeannis*).)

9

A continuing nuisance is one that can be discontinued or abated, meaning it "can be remedied at a reasonable cost by reasonable means." (*Mangini v. Aerojet-General Corp.* (1996) 12 Cal.4th 1087, 1103 (*Mangini*).) " 'Where a continuing nuisance is alleged, every continuation of the nuisance gives rise to a separate claim for damages caused by the nuisance.' " (*Id.* at p. 1093.) "[P]ersons harmed by [a continuing nuisance] may bring successive actions for damages until the nuisance is abated." (*Baker v. Burbank-Glendale-Pasadena Airport Authority* (1985) 39 Cal.3d 862, 869 (*Baker*).) "Recovery is limited, however, to actual injury suffered prior to commencement of each action. Prospective damages are unavailable." (*Ibid.*) "The classic example of a continuing nuisance is an ongoing or repeated disturbance, such as . . . one . . . caused by noise, vibration or foul odor." (*Ibid.*)

Conversely, "[w]here the injury or trespass is of a permanent nature, all damages, past and prospective, are recoverable in one action, and the entire cause of action accrues when the injury is suffered or the trespass committed." (*Rankin v. DeBare* (1928) 205 Cal. 639, 641.) The typical example of a permanent nuisance is an encroaching structure. (See *Baker*, *supra*, 39 Cal.3d at p. 869 ["cases finding the nuisance complained of to be unquestionably permanent in nature have involved solid structures, such as a building encroaching upon the plaintiff's land . . . ."]; *Field-Escandon v. DeMann* (1988) 204 Cal.App.3d 228, 234 [65-foot-long sewer pipe, buried eight feet beneath plaintiff's property, held to constitute a permanent nuisance on motion for summary judgment].) Indeed, this court has noted that "the concept of permanent nuisance . . . was developed" for situations involving "an encroaching building or an underlying public utility pipeline" where abatement is impractical. (*Capogeannis*, *supra*, 12 Cal.App.4th at p. 678.) However, not every structure constitutes a permanent nuisance. In *Phillips v. City of Pasadena* (1945) 27 Cal.2d 104, the court concluded that a locked gate could be characterized as a continuing nuisance because it could be removed at any time.

10

Here, DeBert seeks to recover for damages caused by the installation of a solid structure—a utility pipeline—under her property. She does not allege facts suggesting the pipeline can be removed "at a reasonable cost by reasonable means." (*Mangini*, *supra*, 12 Cal.4th at p. 1103.) Rather, the allegations—that the pipeline runs underground and has done so for close to 30 years—support the reasonable inference that the pipeline is not abatable. Accordingly, we conclude DeBert alleges a permanent nuisance, not a continuing one. (See *Bookout v. State of California ex rel. Dept. of Transportation* (2010) 186 Cal.App.4th 1478, 1489 [at pleading stage, rejecting argument that drainage system constituted a continuing nuisance]; *Lyles v. State of California* (2007) 153 Cal.App.4th 281, 291 [same].)

As noted, DeBert suggests that she is not required to elect between permanent and continuing nuisance at the pleading stage. In some cases, "the distinction between permanent and continuing nuisance is close or doubtful." (*Capogeannis*, *supra*, 12 Cal.App.4th at p. 679.) In such cases, "the plaintiff will be permitted to *elect* which theory to pursue" (i.e., whether to treat the nuisance as permanent or continuing). (*Ibid*.) But "[a] plaintiff cannot simply allege that a nuisance is continuing in order to avoid the bar of the statute of limitations." (*Beck*, *supra*, 44 Cal.App.4th at p. 1217.) The facts alleged here do not present a close case.[5]

Second, DeBert claims there was "no evidence as to when the pipeline was installed," such that there was no basis for the trial court to conclude the complained-of

---

[5] *Baugh v. Garl* (2006) 137 Cal.App.4th 737, despite also involving an alleged trespass and an underground water pipeline, is distinguishable. In *Baugh*, plaintiffs' parcel was served by a pipeline running through an easement on defendant's property. (*Id*. at p. 739.) Plaintiffs sued defendant, alleging he was unlawfully taking water from the pipeline. The court concluded the complaint alleged a continuing trespass because defendant's connection to the pipeline could be "disconnected with relative ease." (*Id*. at p. 747.) The alleged trespass in *Baugh* was the stealing of water, a plainly abatable act. Here, the alleged trespass is the pipeline itself.

11

encroachment occurred more than three years before she sued. At the demurrer stage we are not concerned with evidence but with allegations. In her initial complaint, DeBert alleged the District installed the pipeline in approximately March 1968 or in the 1980s. While she omitted that allegation from her amended complaints, "we may consider the factual allegations of prior complaints." (*Berg & Berg Enterprises*, *LLC v. Boyle*, *supra*, 178 Cal.App.4th at p. 1034 ["a plaintiff may not discard or avoid [factual allegations of prior complaints] by making ' " 'contradictory averments, in a superseding, amended pleading' " ' "].) Therefore, the statute of limitations on DeBert's permanent trespass and permanent nuisance causes of action started running no later than the 1980s (when the pipeline was installed), unless the discovery rule delayed accrual. (*CAMSI IV*, *supra*, 230 Cal.App.3d at p. 1535 ["once the sewer line has been improperly located on the property . . . , the tort is complete and the statute of limitations (unless forestalled by the 'discovery rule' or some other special doctrine) begins to run"].)

Third, DeBert invokes the discovery rule, arguing that the limitations period did not start to run until she discovered the pipeline in September 2012. Defendants respond that the presence of a fire hydrant on the property supports an inference that the property's prior owners knew or should have known about the pipeline, barring application of the discovery rule.

We focus first on DeBert's own knowledge. She alleged she purchased the property in November 2011 and there were no recorded easements by the District on the property. Therefore, she could not have had constructive knowledge of the pipeline prior to November 2011, just 16 months before she filed suit in March 2013.

With respect to prior owners, the question is whether we reasonably can infer from the complaint that those prior owners knew or should have known about the pipeline. (*CAMSI IV*, *supra*, 230 Cal.App.3d at p. 1537.) Defendants say such an inference is reasonably supported by DeBert's mention in her presuit claim of a fire hydrant on the property and outside any easement. We disagree. "[A] court may take judicial notice of

12

the filing and contents of a government claim, but not the truth of the claim." (*Gong v. City of Rosemead* (2014) 226 Cal.App.4th 363, 368, fn. 1, citing Evid. Code, § 452, subd. (c).) Therefore, we need not accept the truth of DeBert's statement that there is a fire hydrant on her land. Without that fact, defendants' theory falls flat.

Even assuming there is a fire hydrant on DeBert's land and that its presence is sufficient as a matter of law to place a reasonable person on inquiry notice, we cannot infer the prior owners were put on notice by the fire hydrant because there are no facts alleged or subject to judicial notice regarding *when* the hydrant was installed. Defendants appear to speculate that the hydrant was installed at the same time as the pipeline. But, if anything, the allegations support the inference that the hydrant was installed later: DeBert alleges that when the District installed the pipeline, it did so "without the permission of . . . the then owners of the property," "covered it up, [and left] no trace of its existence on the surface of the property." Those allegations are sufficient to support a reasonable inference that a lack of discovery by the prior owners was excusable.

In sum, counts 1 and 3 are not subject to general demurrer based on section 338, subdivision (b)'s three-year limitations period because the delayed discovery rule applies.

### 3. Section 337.15

Alternatively, defendants argue counts 1 and 3 are barred by the 10-year limitation on actions involving injury to property caused by latent construction defects set forth in section 337.15. Section 337.15, subdivision (a) prohibits the bringing of any action "to recover damages from any person . . . who . . . performs or furnishes the design, specifications, surveying, planning, supervision, testing, or observation of construction or construction of an improvement to real property more than 10 years after the substantial completion of the . . . improvement for any of the following: [¶] (1) Any latent deficiency in the design, specification, surveying, planning, supervision, or observation of construction or construction of an improvement to, or survey of, real property. [¶] (2) Injury to property, real or personal, arising out of any such latent deficiency."

13

The statute defines "latent deficiency" to mean "a deficiency which is not apparent by reasonable inspection." (§ 337.15, subd. (b).) Section 337.15 provides an " 'absolute' 10-year limitations period [that] applies regardless of when the defect was discovered." (*Lantzy v. Centex Homes* (2003) 31 Cal.4th 363, 366.)

Defendants contend section 337.15 applies to DeBert's complaint because she "is complaining about a defectively located improvement to real property, construction of which was completed over ten years before she filed her action." DeBert does not respond to this argument.

Defendants overlook subdivision (e) of section 337.15, which provides that "the statute cannot be asserted by any person owning, possessing, or controlling the improvement at the time a deficiency proximately causes injury." (*Magnuson-Hoyt v. County of Contra Costa* (1991) 228 Cal.App.3d 139, 144; accord *Leaf v. City of San Mateo* (1980) 104 Cal.App.3d 398, 405 (*Leaf*) ["Section 337.15 does not protect persons in actual possession or control, as owner or otherwise, of the offending property at the time of the proximate cause of the injury."].) DeBert alleges the District owns the pipeline. Therefore, it cannot invoke the limitations period set forth in section 337.15. (See *Leaf*, *supra*, at p. 405 [§ 337.15 held not to protect city from liability for defective sewage and drainage systems in its control].)

For the foregoing reasons, we conclude counts 1 and 3 are not subject to demurrer on statute of limitations grounds.

### C. *Count 4 Is Not Time-barred*

DeBert asserts that her count 4 inverse condemnation claim likewise is timely. Defendants respond that the claim is barred by the limitations periods set forth in sections 338 and 337.15.

#### 1. *Section 338, Subdivision (j)*

Section 338 imposes a three-year limitations period on claims for inverse condemnation based upon damage to real property. (§ 338, subd. (j).)

14

DeBert acknowledges that statute applies to her inverse condemnation cause of action, but argues her claim was timely because it did not accrue until she discovered the pipeline in September 2012.

"A cause of action for inverse condemnation alleging property damage accrues not necessarily on the date of the 'taking,' but, rather, 'when the damage is sufficiently appreciable to a reasonable man.' " (*Lyles v. State of California*, *supra*, 153 Cal.App.4th at p. 286.)  For the reasons discussed above in the context of the discovery rule, the facts alleged support a reasonable inference that the pipeline was not sufficiently appreciable to a reasonable person until DeBert uncovered it in September 2012 while excavating her property.  Because DeBert filed the instant action less than three years later, her inverse condemnation claim is not barred by section 338, subdivision (j).

### 2.    Section 337.15

As discussed above, section 337.15 does not protect the District, which allegedly owns and controls the pipeline.  (See *Leaf*, *supra*, 104 Cal.App.3d at p. 405.)  Thus, that statute does not bar DeBert for pursuing her inverse condemnation claim, despite the fact that the pipeline allegedly was completed more than 10 years before she filed suit.

In sum, we conclude count 4 is not subject to demurrer on statute of limitations grounds.

### D.    *It Is Not Clear From the Face of the Complaint That DeBert's Claims Are Untimely Under the Government Claims Act*

Defendants contend DeBert's section 1983 claims and counts 2, 5, and 6 of the third amended complaint (the trespass, Ralph Act, and Bane Act claims against all defendants) are barred by a six-month limitations period appearing in the Government Claims Act (Gov. Code, § 810 et seq.).

### 1.    *The Government Claims Act*

The Government Claims Act "establishes certain conditions precedent to the filing of a lawsuit against a public entity.  As relevant here, a plaintiff must timely file a claim

for money or damages with the public entity. ([Gov. Code,] § 911.2.)" (*State of California v. Superior Court* (2004) 32 Cal.4th 1234, 1237.) "The failure to timely present a claim for money or damages to a public entity bars the plaintiff from bringing suit against that entity." (*Sparks v. Kern County Bd. of Supervisors* (2009) 173 Cal.App.4th 794, 798; Gov. Code, § 945.4.) "Similarly a claim against a public employee or former public employee for injuries resulting from acts or omissions in the course of his or her employment must be presented if a claim against the employing entity for the same injury must be presented." (*People ex rel. Harris v. Rizzo* (2013) 214 Cal.App.4th 921, 939 (*Rizzo*); Gov. Code, § 950.2.) "This is so because a public entity is required to pay a judgment against its employee 'for an injury arising out of an act or omission occurring within the scope of his or her employment as an employee of the public entity.' " (*Rizzo, supra*, at p. 939, quoting Gov. Code, § 825, subd. (a).)

Government Code section 945.6 provides two alternative statutes of limitation for causes of action under the Government Claims Act where a claim filed with a public entity has been rejected. If the public entity gives written notice of rejection of the claim in accordance with Government Code section 913, the statute of limitations is six months from the day such notice is personally delivered or deposited in the mail. (Gov. Code, § 945.6, subd. (a)(1).) If written notice is not given in compliance with Government Code section 913, the statute of limitations is two years from accrual of the cause of action. (*Id.*, § 945.6, subd. (a)(2).) The same limitations periods apply to suits against public employees and former public employees. (*Id.*, § 950.6, subd. (b).)

### 2. *Government Code Sections 945.6 and 950.6*

Counts 2, 5, and 6 of the third amended complaint (the trespass, Ralph Act, and Bane Act claims against all defendants) and the section 1983 claims are based on DeBert's interactions with District employees in September 2012. DeBert did not allege the facts of those interactions until her first amended complaint, which was filed more than six months after the District denied her presuit claim. Defendants reason that,

16

therefore, the six-month limitations periods set forth in Government Code sections 945.6, subdivision (a)(1) and 950.6, subdivision (b) bar those claims.

Defendants' argument fails because it is not clear from the face of the complaint whether the six-month limitations period applies here. (*E-Fab*, *Inc. v. Accountants*, *Inc. Services* (2007) 153 Cal.App.4th 1308, 1315-1316 [" 'In order for the bar of the statute of limitations to be raised by demurrer, the defect must clearly and affirmatively appear on the face of the complaint . . . .' "].) The six-month limitations period applies only where the public entity gives written notice of rejection of the claim in accordance with Government Code section 913. That provision requires that a written notice rejecting a claim include a warning that the claimant is required to sue within six months. (Gov. Code, § 913, subd. (b).) DeBert has not alleged that her claim was denied in writing or that the denial contained the Government Code section 913-mandated warning. Defendants urge us to "presume the Claim was denied by giving written notice of denial" based on the allegation that the claim was denied within three weeks of being submitted. Even assuming we could reasonably infer the denial was in writing, nothing supports an inference that the denial included the requisite warning. Consequently, the section 1983 claims and the second, fifth, and sixth causes of action in the third amended complaint are not subject to demurrer on the ground that they were untimely under Government Code sections 945.6, subdivision (a)(1) and 950.6, subdivision (b).

### E. Claims Against The Individual Defendants

#### 1. Rogers and Mueller Were Not Improperly Added as Defendants

Defendants maintain DeBert's claims against Rogers and Mueller fail because she did not follow the appropriate procedures when she added them as defendants in the first amended complaint.

"A person may become a party to an action only in one of the ways provided by law. If not named as a party in the original complaint [citation] any proper person may be brought in by amendment of the complaint (§ 473) or may be designated by a fictitious

17

name upon proper allegation in the complaint to that effect. (§ 474.)" (*Nissan v. Barton* (1970) 4 Cal.App.3d 76, 78-79.) A plaintiff may invoke section 474 only if he or she is genuinely ignorant of the defendant's true name. (*Stephens v. Berry* (1967) 249 Cal.App.2d 474, 477.) DeBert never alleged that she was ignorant of Mueller and Rogers's true names and her presuit claim, and the e-mails attached to it, make clear she was aware of their identities before filing suit. Accordingly, Mueller and Rogers could not have been made parties to the suit pursuant to section 474. (*Nissan v. Barton*, *supra*, at p. 79.)

Defendants contend Rogers and Mueller also were not properly brought in by amendment pursuant to section 473 because the trial court did not explicitly grant DeBert leave to add them as defendants. After a demurrer has been sustained, the pleading may be amended only with permission of the court. (§ 473, subd. (a)(1).) Generally, "where the trial court sustains a demurrer to a pleading but grants leave to amend[,] . . . such granting of leave to amend . . . [does] not entitle [the plaintiff] to add new parties." (*People ex rel. Dept. Pub. Wks. v. Clausen* (1967) 248 Cal.App.2d 770, 785-786; see *Schaefer v. Berinstein* (1956) 140 Cal.App.2d 278, 299 ["Leave of court is required under section 473 . . . to add new parties defendant."].)

Here, the trial court sustained the District's demurrer to DeBert's initial one-count complaint with leave to amend. In the first amended complaint, DeBert added Rogers and Mueller as defendants and asserted trespass and section 1983 claims against them. Defendants demurred, arguing (among other things) that adding the new defendants was beyond the scope of the order granting DeBert leave to amend. At a hearing on defendants' demurrer, the court opined that the trespass claim was time-barred and that the section 1983 claims were based on facts not alleged in DeBert's presuit claim. The court did not mention defendants' contention that DeBert improperly added the individual defendants. The trial court sustained the demurrer as to all of the claims

18

asserted against the individual defendants, and granted DeBert leave to amend one of those claims—the trespass cause of action.

DeBert's third amended complaint again asserted a trespass cause of action against the individual defendants, as well as state civil rights claims under the Ralph and Bane Acts. The trial court never expressed any surprise that DeBert's third amended complaint included claims against the individual defendants. And, in the context of defendants' unsuccessful motion for reconsideration, the court indicated its order granting leave to amend was broad. Accordingly, we conclude the trial court implicitly granted DeBert leave to add Rogers and Mueller as defendants and consider whether doing so constituted an abuse of discretion.

" '[T]he trial court has wide discretion in allowing the amendment of any pleading [citations], [and] as a matter of policy the ruling of the trial court in such matters will be upheld unless a manifest or gross abuse of discretion is shown.' " (*Record v. Reason* (1999) 73 Cal.App.4th 472, 486.) In exercising that discretion, "[c]ourts must apply a policy of great liberality in permitting amendments to the complaint at any stage of the proceedings, up to and including trial, when no prejudice is shown to the adverse party." (*Huff v. Wilkins* (2006) 138 Cal.App.4th 732, 746.)

Rogers and Mueller have not shown they were prejudiced by their addition as defendants in November 2013, 14 months after the events giving rise to DeBert's claims against them. We are unpersuaded by their claim that their due process rights "to know about formal legal claims against them and to timely investigate, participate in, and defend themselves" were violated. Statutes of limitations protect against such violations. (See *Pasadena Hospital Assn., Ltd. v. Superior Court* (1988) 204 Cal.App.3d 1031, 1035 ["The policy behind the statute of limitations is to put defendants on notice of the need to defend against a claim in time to prepare a fair defense on the merits."].) Both the first and third amended complaints were filed within two years of the September 2012 incidents on which DeBert's claims against the individual defendants are based;

19

defendants have not shown that any of the applicable statutes of limitations had run when the complaints were filed. For these reasons, we conclude the addition of Rogers and Mueller as defendants under section 473 was not an abuse of discretion.

2. *Claims Against Mueller Are Barred by the Government Claims Act*

Defendants contend the claims against Mueller fail because his conduct was not mentioned in DeBert's presuit claim.

Government Code section 910 requires that a claim state the "date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted" (*id*., subd. (c)) and provide "[a] general description of the . . . injury, damage or loss incurred so far as it may be known at the time of presentation of the claim" (*id*., subd. (d)). The purpose of the Government Claims Act is " 'to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation.' " (*City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 738.) It also " 'enable[s] the public entity to engage in fiscal planning for potential liabilities and to avoid similar liabilities in the future.' " (*Ibid*.) " '[S]o long as the policies of the claims statutes are effectuated, they should be given a liberal construction to permit full adjudication on the merits.' " (*Smith v. County of Los Angeles* (1989) 214 Cal.App.3d 266, 280.) As such, "a claim need not contain the detail and specificity required of a pleading, but need only 'fairly describe what [the] entity is alleged to have done.' " (*Stockett v. Association of Cal. Water Agencies Joint Powers Ins. Authority* (2004) 34 Cal.4th 441, 446 (*Stockett*).) "The claim . . . need not specify each particular act or omission later proven to have caused the injury. [Citation.] A complaint's fuller exposition of the factual basis beyond that given in the claim is not fatal, so long as the complaint is not based on an 'entirely different set of facts.' " (*Id*. at p. 447.) "Only where there has been a 'complete shift in allegations, usually involving an effort to premise civil liability on acts or omissions committed at different times or by different persons than those described in the claim,' have courts generally found the

20

complaint barred. [Citation.] Where the complaint merely elaborates or adds further detail to a claim, but is predicated on the same fundamental actions or failures to act by the defendants, courts have generally found the claim fairly reflects the facts pled in the complaint." (*Ibid.*) On the other hand, a complaint is subject to dismissal " 'if it alleges a factual basis for recovery which is not fairly reflected in the written claim.' " (*Ibid.*)

DeBert's claim alleged Rogers trespassed on her property on two occasions in September 2012. Her complaint alleges Mueller participated in the first trespass and directed the actions of Rogers in connection with the second. On the one hand, the complaint is premised on the same events alleged in the claim. On the other, the complaint attempts to impose liability on a person not described in the claim based on new "fundamental actions" (i.e., Mueller's conduct). (*Stockett*, *supra*, 34 Cal.4th at p. 447.) Ultimately, the question for us is whether "the claim [gave] adequate information for the [District] to investigate." (*Id.* at p. 449.) It certainly contained sufficient facts to prompt the District to investigate Rogers's entries onto DeBert's land in September 2012. However, we cannot say that "[a] reasonable investigation by [the District] would have included questioning" Mueller or looking into his possible involvement. (*Ibid.*) Because the District "was given no warning that it might be sued for" Mueller's involvement in the alleged trespasses "and had no opportunity to consider the validity of such a claim until the filing of the amended complaint" (*Fall River Joint Unified School Dist. v. Superior Court* (1988) 206 Cal.App.3d 431, 436), we conclude the presuit claim is insufficient as to the claims against Mueller.

We are not persuaded by DeBert's contention that the District waived any defense based on her noncompliance with the Government Claims Act by not notifying her that her claim was defective as required by Government Code sections 910.8 and 911. Government Code section 910.8 provides that "[i]f, in the opinion of the board or the person designated by it, a claim as presented fails to comply substantially with the requirements of [Government Code] Sections 910 and 910.2, . . . the board or the person

21

may, at any time within 20 days after the claim is presented, give written notice of its insufficiency, stating with particularity the defects or omissions therein. . . ." Under Government Code section 911, "[a]ny defense as to the sufficiency of the claim based upon a defect or omission in the claim as presented is waived by failure to give notice of insufficiency with respect to the defect or omission as provided in [Government Code] Section 910.8 . . . ."

Here, the issue is a variance between the claim and the complaint. The District could not have anticipated that variance at the time it denied DeBert's claim, which was before she filed suit. Accordingly, it was not required to notify her of that issue.

"The issue of leave to amend is always open on appeal, even if not raised by the plaintiff." (*City of Stockton v. Superior Court*, *supra*, 42 Cal.4th at p. 746.) DeBert has not demonstrated that she could amend her complaint to show she satisfied the claims presentation requirements of the Government Claims Act with respect to her claims against Mueller.

### *F.* *Section 1983 Claims*

DeBert asserts her section 1983 claims were timely and properly pleaded in her first amended complaint. Defendants respond that DeBert waived her right to appeal any error related to her section 1983 claims by (1) failing to explain on appeal why the order sustaining their demurrer to the first amended complaint is appealable and (2) asserting state civil rights claims in the second and third amended complaints.

#### *1.* *Appealability and California Rules of Court, Rule 8.204(a)(2)(B)*

DeBert's opening brief does not "[s]tate that the judgment appealed from is final, or explain why the order[s] appealed from"—those sustaining the demurrers to the first and third amended complaints—are "appealable," in violation of rule 8.204(a)(2)(B) of the California Rules of Court. On that basis, defendants urge us to (1) strike all references to DeBert's section 1983 claims from her opening brief and (2) find DeBert

22

waived her right to appeal from the order sustaining the demurrer to the first amended complaint.

We exercise our discretion under California Rules of Court, rule 8.204(e)(2)(C) to disregard the noncompliance because, to the extent the order sustaining the demurrer to the first amended complaint addressed the section 1983 claims, it is clearly reviewable. An order sustaining a demurrer, whether with or without leave to amend, is not appealable. (*Lopez v. Brown* (2013) 217 Cal.App.4th 1114, 1132.) Instead, an " ' "order sustaining a demurrer . . . is generally reviewable on appeal from the final judgment in the action." ' " (*Ibid.*; see § 906 [on appeal from a final judgment, "the reviewing court may review . . . any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the judgment or order appealed from . . . ."].) Here, the order sustaining the demurrer to DeBert's first amended complaint was without leave to amend as to the section 1983 claims and with leave to amend as to the other claims. That order was not immediately appealable. DeBert elected to amend the causes of action for which she was granted leave to amend. In doing so, she did not waive any error in the sustaining of the demurrer to the section 1983 claims that she never amended. (*County of Santa Clara v. Atlantic Richfield Co.* (2006) 137 Cal.App.4th 292, 312 ["[t]he rule that a choice to amend waives any error can reasonably be applied only on a *cause-of-action-by-cause-of-action basis*"].) She "may challenge the intermediate ruling on the demurrer [to her first amended complaint] on . . . appeal from [the] subsequent judgment," which defendants acknowledge is final. (*Ibid.*)

### 2. *DeBert Did Not Waive Errors Related to Her Section 1983 Claims By Asserting State Civil Rights Claims*

Defendants contend DeBert waived her right to pursue her section 1983 claims on appeal by asserting state law civil rights claims (under the Ralph and Bane Acts) in her second and third amended complaints. According to defendants, because DeBert's section 1983 claims and state civil rights claims are largely based on the same facts "and

23

relate to the same primary right," she cannot pursue both sets of claims without improperly splitting a single cause of action. Even assuming all of DeBert's civil rights claims involve the same primary right,[6] we conclude DeBert has not impermissibly split her cause of action.

"The primary right theory is a theory of code pleading that has long been followed in California. It provides that a 'cause of action' is comprised of a 'primary right' of the plaintiff, a corresponding 'primary duty' of the defendant, and a wrongful act by the defendant constituting a breach of that duty. [Citation.] The most salient characteristic of a primary right is that it is indivisible: the violation of a single primary right gives rise to but a single cause of action." (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 681.) " 'Even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief.' " (*Id*. at pp. 681-682.)

" 'The primary right theory has a fairly narrow field of application. It is invoked most often when a plaintiff attempts to divide a primary right and enforce it in two suits.' " (*Hamilton v. Asbestos Corp*. (2000) 22 Cal.4th 1127, 1146.) Here, we are not concerned with separate suits, but with amended complaints in a single action. It is for that reason that defendants' reliance on *Ricard v. Grobstein*, *Goldman*, *Stevenson*, *Siegel*, *LeVine & Mangel* (1992) 6 Cal.App.4th 157 is misplaced. In an initial malpractice action, the *Ricard* plaintiffs unsuccessfully sought to amend their complaint to add a claim for conspiracy. They then filed a separate suit, which "was limited to the identical claim they had unsuccessfully sought to join in their malpractice action." (*Id*. at p. 159.) The plaintiffs "conceded" the second suit was an "effort to avoid [the first court's] ruling without challenging it in an authorized manner." (*Ibid*.) In *Ricard*, the appellate court

---

[6] It is far from obvious that all of DeBert's section 1983 claims and her Ralph Act and Bane Act claims involve the same primary right. Defendants do not indicate what primary right they believe the claims involve.

24

affirmed an order sustaining a demurrer to the complaint in the second action. In doing so, it concluded that plaintiffs' "second suit would merely have split their cause of action in violation of the policy against misuse of court time." (*Id*. at p. 162.) *Ricard* is distinguishable because it involved two separate lawsuits.

The primary right theory does not prevent a plaintiff from pleading "the same cause of action according to different legal theories," something that "was permissible at common law, and is also allowed under the codes." (4 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 402, p. 542.) "[W]hen for any reason the pleader thinks it desirable so to do, as where the exact nature of the facts is in doubt, or where the exact legal nature of plaintiff's right and defendant's liability depend on facts not well known to the plaintiff, his pleading may set forth the same cause of action in varied and inconsistent counts with strict legal propriety." (*Tanforan v. Tanforan* (1916) 173 Cal. 270, 273.) This permissible practice, known as "pleading inconsistent causes of action," is precisely what DeBert engaged in here. (4 Witkin, *supra*, Pleading, § 402, p. 543.) She did not waive her right to pursue section 1983 claims by asserting Ralph and Bane Act claims.

> 3.     *The Government Claims Act Does Not Apply to Section 1983 Claims*

DeBert argues that the Government Claims Act does not apply to her section 1983 claims. While defendants do not address this argument, we shall do so to provide guidance to the parties and the court on remand.

"[F]ederal civil rights claims under 42 United States Code section 1983 are exempt from the requirements of the Government Claims Act . . . because the supremacy clause of the United States Constitution does not permit a state law to alter or restrict federally created rights. As our Supreme Court has noted, 'the filing of a claim for damages "is more than a procedural requirement, it is a condition precedent to plaintiff's maintaining an action against defendants, in short, an integral part of plaintiff's cause of action." And while it may be constitutionally permissible for the Legislature to place this substantive impediment in the path of a state cause of action, it is clear that the

25

supremacy clause will not permit a like abrogation of the perquisites of a federal civil rights litigant.' " (*Gatto v. County of Sonoma* (2002) 98 Cal.App.4th 744, 764, quoting *Williams v. Horvath* (1976) 16 Cal.3d 834, 842.) Accordingly, the Government Claims Act does not apply to DeBert's section 1983 claims.

### G. Sham Pleading

Defendants urge us to affirm the judgment of dismissal based on DeBert's litigation tactics below, including her omission of allegations regarding when the pipeline was installed from her amended complaints and her request for a default judgment, which the trial court described as "a bad faith argument."

Defendants rely on cases acknowledging that trial courts have the inherent power to dismiss actions shown to be "fictitious or sham." (*Cunha v. Anglo California Nat. Bank* (1939) 34 Cal.App.2d 383, 388; accord *Utz v. Aureguy* (1952) 109 Cal.App.2d 803, 806.) "[A]lthough the discretionary power to dismiss with prejudice has been upheld in this state, its use has been tightly circumscribed." (*Lyons v. Wickhorst* (1986) 42 Cal.3d 911, 916.) "In those situations in which a dismissal pursuant to the court's discretionary power has been upheld, affirmance has not been without reservation," in part due to the long-standing "policy favoring a trial on the merits." (*Ibid.*)

We decline to affirm on the ground the complaints were sham pleadings. Defendants did not seek dismissal of DeBert's action below on that ground, and there is no indication in the record that the trial court's judgment of dismissal was entered for this reason. Moreover, defendants have not shown DeBert's claims to be fictitious or invalid.

## III. DISPOSITION

The judgment of dismissal is reversed and the cause is remanded to the superior court. On remand, the court is directed to vacate its order sustaining defendants' demurrer to the third amended complaint and to enter a new order (1) sustaining without leave to amend the demurrer to the third amended complaint as to the claims against James Mueller and (2) overruling the demurrer to the third amended complaint as to the

claims against Rick Rogers and the San Lorenzo Valley Water District. The court is further directed to vacate its order sustaining defendants' demurrer to the first amended complaint to the extent it sustained the demurrer to DeBert's 42 United States Code section 1983 claims without leave to amend, and to enter a new order (1) sustaining without leave to amend the demurrer to 42 United States Code section 1983 claims against James Mueller and (2) overruling the demurrer to 42 United States Code section 1983 claims against Rick Rogers and the San Lorenzo Valley Water District. The parties shall bear their own costs on appeal.

_____
                    Walsh, J.[*]


WE CONCUR:



_____
        Rushing, P.J.




_____
        Elia, J.




DeBert v. San Lorenzo Valley Water District et al.
H041482

_____

    [*] Judge of the Santa Clara County Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.